**AIKEN SCHENK HAWKINS & RICCIARDI P.C.**
**4742 North 24th Street**
**Suite 100**
**Phoenix, Arizona 85016-4859**
**Telephone: (602) 248-8203**
**Facsimile: (602) 248-8840**
**D. Lamar Hawkins – 013251**
**Philip R. Rupprecht - 009288**
**Christopher R. Chicoine – 025260**
**E-Mail: dlh@ashrlaw.com**
**E-Mail: prr@ashrlaw.com**
**E-Mail: crc@ashrlaw.com**
**Attorneys for Debtors**

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>TIMOTHY J. BOWMAN and LeANNE C. BOWMAN,<br><br>                           Debtors.<br><br>Address:     P.O. Box 26401<br>               Prescott Valley, AZ 86312<br><br>Social Security No(s).:   xxx-xx-0616<br>                               xxx-xx-8559 | Chapter 11 Proceedings<br><br>Case No. 2:09-bk-12983-RTBP<br><br>**DEBTORS' FIRST DISCLOSURE STATEMENT** |

## I.    INTRODUCTION

This document is the disclosure statement of the Debtors, Timothy J. Bowman and LeAnne C. Bowman (the "Debtors"), in the above-entitled Chapter 11 bankruptcy proceeding. This Disclosure Statement is submitted by the Debtors pursuant to 11 U.S.C. §1125.

11 U.S.C. §1125(b) prohibits the solicitation of acceptances or rejections of a plan of reorganization unless such plan is accompanied by a copy of the Disclosure Statement which has been approved by the Bankruptcy Court.

The purpose of this Disclosure Statement is to provide creditors and interested parties in this bankruptcy proceeding with such information as may reasonably be deemed sufficient to allow creditors and interested parties to make an informed decision regarding the Debtors' Plan of Reorganization ("Plan"), a copy of which is attached hereto and incorporated herein as Exhibit "A".

Unless otherwise noted, those portions of the Plan and this Disclosure Statement providing factual information concerning the Debtors, their assets and liabilities, have been prepared from

information submitted by the Debtors and their retained professionals. The Debtors and other professionals employed by the Debtors have utilized all relevant, non-privileged information provided by the Debtors in preparing this Disclosure Statement and the Plan.

This Disclosure Statement contains information that may influence your decision to accept or reject the Debtors' proposed Plan. Please read this document with care.

The financial information contained in this Disclosure Statement has not been subjected to an audit by an independent certified public accountant. For that reason, the Debtors are not able to warrant or represent that the information contained in this Disclosure Statement is without any inaccuracy. To the extent practicable, the information has been prepared from the Debtors' financial books and records and great effort has been made to ensure that all such information is fairly representative.

This Disclosure Statement and the Plan will classify all creditors into Classes. The treatment of each Class of creditors will be set forth in this Disclosure Statement and in the Plan. You should carefully examine the treatment of the Class to which your Claim will be assigned.

This Disclosure Statement requires approval by the Bankruptcy Court after notice and a hearing pursuant to 11 U.S.C. §1125(b). Once approved, the Disclosure Statement will be distributed with the Debtors' proposed Plan for voting. Approval of the Disclosure Statement by the Bankruptcy Court does not constitute either certification or approval of the Debtors' Plan by the Bankruptcy Court or that the Disclosure Statement is without any inaccuracy.

The Bankruptcy Court will confirm the Plan if the requirements of Section 1129 of the Bankruptcy Code are satisfied. The Bankruptcy Court must determine whether the Plan has been accepted by each impaired class entitled to vote on the Plan. Impaired classes entitled to vote on the Plan are those classes of claims whose legal, equitable or contractual rights are altered, as defined under §1124 of the Bankruptcy Code. An impaired class of claims is deemed to have accepted the Plan if at least two-thirds in amount of those claims who vote and more than one-half in number of those claims who vote have accepted the Plan. An impaired class of interests is deemed to have accepted the Plan if the Plan has been accepted by at least two-thirds in amount of the allowed interests who vote on the Plan.

Even if each class of creditors does not accept the Plan, the Plan can be confirmed under §1129(b) of the Code, so long as one impaired class of creditors accepts the Plan. This is referred to as the "cram down" provision. The failure of each class to accept the Plan could very well result in a conversion of this case to a Chapter 7 or dismissal of the Chapter 11, and the secured creditors repossessing its collateral and disposing of it in a commercially reasonable manner with no obligation to unsecured creditors.

Only the votes of those creditors or interested parties whose ballots are timely received will be counted in determining whether a class has accepted the Plan.

## II.   DEFINITIONS

The definitions set forth in Article I of the Plan apply in this Disclosure Statement except to the extent other definitions are set forth in this Disclosure Statement.

## III.   THE DEBTORS AND EVENTS PRECIPITATING THE CHAPTER 11

The Debtors are a married couple residing in Yavapai County, Arizona. Timothy Bowman works in the construction industry and LeAnne Bowman is a homemaker and works on managing the Debtors rental properties. The Debtors own twenty real properties (collectively, the "Properties"). One of the Properties is the Debtor's primary residence, eight of the Properties are residential income properties and the remaining eleven Properties are vacant land. The Debtors have two daughters, ages fifteen and thirteen and two sons, ages ten and eight.

The Debtors were previously very successful in purchasing, selling, and holding for rent numerous duplexes, fourplexes, mobile homes and houses. As the real estate market declined, the Debtors' ability to have positive cash flow on the rental properties declined. The Debtors began negotiations with their various lenders on the rental properties to modify loan terms so that the rentals could remain positive in their cash flow. Some lenders were willing to work with the Debtors, many were not. The Debtors worked hard to continue to service the secured debts, but ultimately the negative cash flow depleted the Debtors' resources. Ultimately as the real estate market crashed, the Debtors' ability to obtain loan modifications and continue to service the debt became a serious problem. Several of the properties were not possible to maintain even if the Debtors were able to obtain a loan modification. The Debtors allowed these properties to go back to the lenders. Given the downturn of the real estate market, it is potential that all of the rental properties are worth less than the

amounts owing on the loans and the rental income is not sufficient to cover the secured debt without obtaining modifications. The Debtors' Plan seeks the necessary modifications so that all of the rental properties will cash flow while servicing the modified debt.

Due to the current real estate market, the Debtors' inability to convince all of their secured creditors to agree to loan modifications without the assistance of a bankruptcy proceeding, and the potential tax ramifications if the Debtors did not file for bankruptcy protection, the Debtors had no choice but to file a Chapter 11 Bankruptcy.

## IV.   SIGNIFICANT EVENTS DURING THE CHAPTER 11

### A.   Administrative Proceedings

The Debtors filed their Petition for Relief under Chapter 11 on June 11, 2009. A first meeting of creditors was held on August 7, 2009.

### B.   Retention of Professionals

The Debtors retained Aiken Schenk Hawkins & Ricciardi P.C. ("ASHR") to act as their bankruptcy counsel. The Court signed an Order approving the retention on June 12, 2009.

### C.   Appointment of Unsecured Creditors Committee

On July 9, 2009, the United States Trustee's Office filed a statement concerning its inability to appoint a committee of unsecured creditors.

### D.   Claims Bar Date

On June 18, 2009, the Debtors filed a Motion to Set Bar Date to File Claims. On June 22, 2009, the Court signed an Order setting July 31, 2009 as the bar date for claims.

### E.   Motion to Use Cash Collateral

On June 17, 2009, the Debtor filed Motion for Authorization to Use Cash Collateral. The hearing was held on June 23, 2009. The Order Approving the Motion for Authorization to Use Cash Collateral was signed on June 24, 2009.

## V.   DESCRIPTION OF ASSETS AND LIABILITIES OF THE DEBTORS

The Debtors have not obtained recent appraisals of any of their assets. The values ascribed to the assets below are based on the Debtors' best estimate and other factors such as the purchase price, comparable sales, and tax assessments.

A.    Real Property

    1.    3075 N. Pleasant View Drive, Debtors' Residence

The Debtors own a single family residence located at 3075 N. Pleasant View Drive, Prescott Valley, Yavapai County, Arizona 86314 (the "Residence"). The Debtors believe the current value of their Residence is $200,000.00 based upon the current market and comparative sales. Countrywide Home Loans ("Countrywide") holds a first position deed of trust on the Residence. RBC Mortgage Company filed a first position secured proof of claim on behalf of BAC Home Loans Servicing, L.P. in the amount of $202,519.07. Wells Fargo holds a second position deed of trust on the Residence. Wells Fargo filed a second position secured proof of claim in the amount of $250,842.19. When possible costs of sale are factored in, the Debtors do not believe that any equity exists in the Residence for the benefit of the bankruptcy estate.

    2.    8120 E. Barbara Rd.

The Debtors own a single family residence located at 8120 E. Barbara Road, Prescott Valley, Yavapai County, Arizona  86314 (the "Barbara Road Property"). The Debtors believe the current value of the Barbara Road Property is $85,000.00 based upon the current market and comparative sales. National City Mortgage holds a first position deed of trust on the Barbara Road Property. National City Mortgage filed a first position secured proof of claim in the amount of $125,723.50. When possible costs of sale are factored in, the Debtors do not believe that any equity exists in the Barbara Road Property for the benefit of the bankruptcy estate.

    3.    20519 E. Quail Run Dr.

The Debtors own a mobile home located at 20519 E. Quail Run Drive, Cordes Lakes, Yavapai County, Arizona  86333 (the "Quail Run Property"). The Debtors believe the current value of the Quail Run Property is $65,000.00 based upon the current market and comparative sales. M&I Marshall & Ilsley Bank ("M&I") holds a first position deed of trust on the Quail Run Property. M&I filed a first position secured proof of claim in the amount of $85,255.04. When possible costs of sale are factored in, the Debtors do not believe that any equity exists in the Quail Run Property for the benefit of the bankruptcy estate.

4.     22208 W. Bajada

The Debtors own a single family residence located at 22208 W. Bajada, Wittmann, Maricopa County, Arizona 86361 (the "Bajada Property"). The Debtors believe the current value of the Bajada Property is $75,000.00 based upon the current market and comparative sales. M&I Marshall & Ilsley Bank ("M&I") holds a first position deed of trust on the Bajada Property. M&I filed a first position secured proof of claim in the amount of $100,244.89. When possible costs of sale are factored in, the Debtors do not believe that any equity exists in the Bajada Property for the benefit of the bankruptcy estate.

5.     20239 E. Zaragoza Dr.

The Debtors own a single family residence located at 20239 E. Zaragoza Drive, Cordes Lakes, Yavapai County, Arizona 86333 (the "Zaragoza Property"). The Debtors believe the current value of the Zaragoza Property is $85,000.00 based upon the current market and comparative sales. Alton and Yvonne Eklund (the "Eklunds") hold a first position deed of trust on the Zaragoza Property. Noteworld/Chicago Title Company ("Noteworld") is the loan servicing company for the Eklunds. The Eklunds filed a first position secured proof of claim in the amount of $112,500.00. When possible costs of sale are factored in, the Debtors do not believe that any equity exists in the Zaragoza Property for the benefit of the bankruptcy estate.

6.     15910 S. Black Mountain Rd. (also known as 15909 Cordes Lakes Dr.)

The Debtors own a mobile home located at 15910 S. Black Mountain Rd., Cordes Lakes, Yavapai County, Arizona 86333 (the "Black Mountain Property"). The Debtors believe the current value of the Black Mountain Property is $10,000.00 based upon the current market and comparative sales. ASHR received a secured interest in the Black Mountain Property to the full value of the collateral to secure payment of the Debtors' legal fees. When possible costs of sale are factored in, the Debtors do not believe that any equity exists in the Black Mountain Property for the benefit of the bankruptcy estate.

7.     3201 N. Yavapai Rd. E.

The Debtors own a fourplex located at 3201 N. Yavapai Rd. E., Prescott Valley, Yavapai County, Arizona 86314 (the "Yavapai Property"). The Debtors believe the current

value of the Yavapai Property is $145,000.00 based upon the current market and comparative sales. America's Servicing Company ("ASC") holds a first position deed of trust on the Yavapai Property. ASC filed a first position secured proof of claim in the amount of $444,221.84. When possible costs of sale are factored in, the Debtors do not believe that any equity exists in the Yavapai Property for the benefit of the bankruptcy estate.

8.    3316 N. Corrine Dr.

The Debtors own a fourplex located at 3316 N. Corrine Drive, Prescott Valley, Yavapai County, Arizona 86314 (the "Corrine Property"). The Debtors believe the current value of the Corrine Property is $175,000.00 based upon the current market and comparative sales. America's Servicing Company ("ASC") holds a first position deed of trust on the Yavapai Property. ASC filed a first position secured proof of claim in the amount of $465,943.79. When possible costs of sale are factored in, the Debtors do not believe that any equity exists in the Corrine Property for the benefit of the bankruptcy estate.

9.    3425 N. Starlight Dr.

The Debtors own a single family residence located at 3425 N. Starlight Drive, Prescott Valley, Yavapai County, Arizona 86314 (the "Starlight Property"). The Debtors believe the current value of the Starlight Property is $80,000.00 based upon the current market and comparative sales. Chase holds a first position deed of trust on the Starlight Property. Chase filed a first position secured proof of claim in the amount of $167,801.16. When possible costs of sale are factored in, the Debtors do not believe that any equity exists in the Starlight Property for the benefit of the bankruptcy estate.

10.    20048/20060 E. Stagecoach Trail

The Debtors own .37 acres of vacant land located at 20048/20060 E. Stagecoach Trail, Cordes Lakes, Yavapai County, Arizona 86333 (the "20048 Stagecoach Property"). The Debtors believe the current value of the 20048 Stagecoach Property is $8,000.00 based upon the current market and comparative sales. Duane Wyles ("Wyles") hold a first position deed of trust on the 20048 Stagecoach Property. Yavapai Title Agency, Inc. ("Yavapai Title") is the loan servicing company for Wyles. Wyles filed a secured proof of claim in the amount of

$18,000.00. When possible costs of sale are factored in, the Debtors do not believe that any equity exists in the 20048 Stagecoach Property for the benefit of the bankruptcy estate.

11.    3076 N. Pine View Dr.

The Debtors own 1 acre of vacant land located at 3076 N. Pine View Drive, Prescott Valley, Yavapai County, Arizona 86314 (the "Pine View Property"). The Debtors believe the current value of the Pine View Property is $60,000.00 based upon the current market and comparative sales. Elwood and Martha Dudley (the "Dudleys") hold a first position deed of trust on the Pine View Property. Noteworld/Chicago Title Company ("Noteworld") is the loan servicing company for the Dudleys. The Dudleys filed a secured proof of claim in the amount of $125,000.00. When possible costs of sale are factored in, the Debtors do not believe that any equity exists in the Pine View Property for the benefit of the bankruptcy estate.

12.    5 Lots on Sierra Dr.

The Debtors own 2.5 acres of vacant land consisting of five lots located on Sierra Drive, Cordes Lakes, Yavapai County, Arizona 86333 (the "Sierra Drive Property"). The Debtors believe the current value of the Sierra Drive Property is $85,000.00 based upon the current market and comparative sales. Janet M. Quinton, Pamela Lane and William Lane, the heirs of Dorothy A. Metzger (the "Metzger Heirs"), hold a first position deed of trust on the Sierra Drive Property. Noteworld/Chicago Title Company ("Noteworld") is the loan servicing company for the Metzger Heirs. The Metzger Heirs filed a secured proof of claim in the amount of $78,377.26. When possible costs of sale are factored in, the Debtors do not believe that any equity exists in the Sierra Drive Property for the benefit of the bankruptcy estate.

13.    19557 E. Palo Verde Dr.

The Debtors own .29 acres of vacant land located at 19557 E. Palo Verde Drive, Cordes Lakes, Yavapai County, Arizona 86333 (the "19957 Palo Verde Property"). The Debtors believe the current value of the 19557 Palo Verde Property is $5,000.00 based upon the current market and comparative sales. ASHR received a secured interest in the 19557 Palo Verde Property to the full value of the collateral to secure payment of the Debtors' legal fees. When

possible costs of sale are factored in, the Debtors do not believe that any equity exists in the 19557 Palo Verde Property for the benefit of the bankruptcy estate.

14.    19550 E. Palo Verde Dr.

The Debtors own .36 acres of vacant land located at 19550 E. Palo Verde Drive, Cordes Lakes, Yavapai County, Arizona 86333 (the "19950 Palo Verde Property"). The Debtors believe the current value of the 19550 Palo Verde Property is $5,000.00 based upon the current market and comparative sales. ASHR received a secured interest in the 19550 Palo Verde Property to the full value of the collateral to secure payment of the Debtors' legal fees. When possible costs of sale are factored in, the Debtors do not believe that any equity exists in the 19550 Palo Verde Property for the benefit of the bankruptcy estate.

15.    20156 E. Stagecoach Trail

The Debtors own .2 acres of vacant land located at 20156 E. Stagecoach Trail, Cordes Lakes, Yavapai County, Arizona 86333 (the "20156 Stagecoach Property"). The Debtors believe the current value of the 20156 Stagecoach Property is $5,000.00 based upon the current market and comparative sales. ASHR received a secured interest in the 20156 Stagecoach Property to the full value of the collateral to secure payment of the Debtors' legal fees. When possible costs of sale are factored in, the Debtors do not believe that any equity exists in the 20156 Stagecoach Property for the benefit of the bankruptcy estate.

16.    19976 E. Stagecoach Trail

The Debtors own .15 acres of vacant land located at 19976 E. Stagecoach Trail, Cordes Lakes, Yavapai County, Arizona 86333 (the "19976 Stagecoach Property"). The Debtors believe the current value of the 19976 Stagecoach Property is $5,000.00 based upon the current market and comparative sales. ASHR received a secured interest in the 19976 Stagecoach Property to the full value of the collateral to secure payment of the Debtors' legal fees. When possible costs of sale are factored in, the Debtors do not believe that any equity exists in the 19976 Stagecoach Property for the benefit of the bankruptcy estate.

17.    34325 W. North Via de Oro Pkwy.

The Debtors own 4.809 acres of vacant land located at 34325 W. North Via de

Oro Parkway, Seligman, Yavapai County, Arizona 86337 (the "34325 Via de Oro Property"). The Debtors believe the current value of the 34325 Via de Oro Property is $5,000.00 based upon the current market and comparative sales. ASHR received a secured interest in the 34325 Via de Oro Property to the full value of the collateral to secure payment of the Debtors' legal fees. When possible costs of sale are factored in, the Debtors do not believe that any equity exists in the 34325 Via de Oro Property for the benefit of the bankruptcy estate.

        18.     <u>34255 W. North Via de Oro Pkwy.</u>

        The Debtors own 5.171 acres of vacant land located at 34255 W. North Via de Oro Parkway, Seligman, Yavapai County, Arizona 86337 (the "34255 Via de Oro Property"). The Debtors believe the current value of the 34255 Via de Oro Property is $5,000.00 based upon the current market and comparative sales. ASHR received a secured interest in the 34255 Via de Oro Property to the full value of the collateral to secure payment of the Debtors' legal fees. When possible costs of sale are factored in, the Debtors do not believe that any equity exists in the 34255 Via de Oro Property for the benefit of the bankruptcy estate.

        19.     <u>7483 N. 8 Mile Blvd.</u>

        The Debtors own 1.01 acres of vacant land located at 7483 N. 8 Mile Blvd, Williams, Coconino County, Arizona 86046 (the "8 Mile Property"). The Debtors believe the current value of the 8 Mile Property is $5,000.00 based upon the current market and comparative sales. ASHR received a secured interest in the 8 Mile Property to the full value of the collateral to secure payment of the Debtors' legal fees. When possible costs of sale are factored in, the Debtors do not believe that any equity exists in the 8 Mile Property for the benefit of the bankruptcy estate.

        20.     <u>1920 W. Hoover Dr.</u>

        The Debtors own 1 acre of vacant land located at 1920 W. Hoover Drive, Meadview, Mohave County, Arizona 86444 (the "Hoover Property"). The Debtors believe the current value of the Hoover Property is $5,000.00 based upon the current market and comparative sales. ASHR received a secured interest in the Hoover Property to the full value of the collateral to secure payment of the Debtors' legal fees. When possible costs of sale are factored in, the Debtors do not believe that any equity exists in the Hoover Property for the benefit of the bankruptcy estate.

B.    Personal Property

    1.    Bank Accounts

The Debtors held approximately $196.00 in personal bank accounts at the time of the filing of the petition for relief herein. The Debtors claim $300.00 exemption personal bank accounts.

    2.    Miscellaneous Household Goods and Furnishings

The Debtors listed approximately $3,725.00 in miscellaneous household goods and furnishings in their Schedule B. All of these assets are exempt.

    3.    Miscellaneous Books, Pictures and Hobby Equipment

The Debtors listed approximately $40.00 in miscellaneous books and pictures in their Schedule B. These assets are exempt.

The Debtors also listed six bicycles, one sewing machine, five bibles, 11 firearms, one piano and various musical instruments, one set of child-sized golf clubs and miscellaneous sports/recreational equipment. All of these assets are exempt, except for the golf clubs and the miscellaneous sports/recreational equipment, which are valued in the Debtors' Schedule B at approximately $20.00 and $875.00, respectively, for a total of $895.00.

    4.    Wearing Apparel/Jewelry

The Debtors listed approximately $300.00 for miscellaneous wearing apparel and $900.00 for wedding rings. These assets are exempt.

    5.    Insurance

The Debtors listed a term life insurance policy in their Schedule B with a $0 cash value. This asset is exempt.

    6.    Interest in 401(k) and IRA

Timothy Bowman listed a 401(k) with FNF Construction with a value of $11,300.00 in the Debtors' Schedule B. LeAnne Bowman listed a rollover IRA with a value of $56,757.00 in the Debtors' Schedule B. These assets are exempt.

    7.    Trust

The Debtors listed an interest in The Bowman Empire Trust dated February 1,

1997. The trust is nothing more than an estate planning device and has no value to the bankruptcy estate. It does not own an interest in any assets that are not otherwise already disclosed in the Debtors' Schedules and herein.

        8.    <u>Vehicles</u>

        The Debtors listed the following vehicles and trailer in their Schedule B:

| Vehicle | Value | Creditor | Debt |
|---|---|---|---|
| 2005 Chevy Express Van | $7,000 | | $0 |
| 1991 Chevy 1500 Truck | $1,500 | | $0 |
| 16' Flatbed Trailer | $300 | | $0 |

The Debtors claim their exemptions on the 2005 Chevy Express Van and the 1991 Chevy 1500 Truck..

        9.    <u>Miscellaneous Office Equipment and Supplies</u>

        The Debtors listed approximately $460.00 in miscellaneous office furnishings and supplies in their Schedule B. These assets are exempt.

        10.    <u>Pets</u>

        The Debtors have listed one dog, one cat and one rabbit in their Schedule B. These assets are exempt.

    C.    <u>Exemptions</u>

        The Debtors have listed various exemptions for real and personal property in Schedule C. At this time no objections to exemptions have been filed.

    D.    <u>Financial Reports</u>

        The Debtors' monthly operating reports are current and copies can be obtained from the Court's electronic docket or from the Debtors' counsel.

    E.    <u>Administrative Expenses</u>

        The Debtors anticipate their administrative expenses will consist primarily of attorneys' fees for ASHR. On January 5, 2009, ASHR received a check in the amount of $440.00 from Timothy and LeAnne Bowman. On February 4, 2009, ASHR received a check in the amount of $26.00 from Timothy and LeAnne Bowman. On May 7, 2009, ASHR received a check in the amount of $2,000.00 from Timothy and LeAnne Bowman. ASHR also received secured interests in

real property owned by the Debtors located in Coconino, Mohave and Yavapai counties to the full value of the collateral. ASHR applied $1,039.00 for the filing fee for the Chapter 11 bankruptcy proceeding of the Debtor. ASHR estimates its remaining fees will be in the range of $30,000.00 depending on creditor activity in this case. Whether ASHR preserves its interest in these assets or is simply paid through a sale of these assets, these assets should be sufficient to pay ASHR's Administrative Claim. There may be additional administrative expenses for related costs such as experts and appraisal fees.

      F.    <u>Priority Claims</u>

The Debtors listed in their Schedule E the Arizona Department of Revenue, the Internal Revenue Service, and various city governments as "Notice Only." The Arizona Department of Revenue filed an unsecured priority proof of claim in the amount of $1,478.00 based on estimated taxes for 2008. The Internal Revenue Service ("IRS") filed an unsecured priority Proof of Claim in the amount of $4,762.25 based on estimated taxes for 2008. Both of these Proofs of Claim should be amended once the Debtors have filed their tax returns.

      G.    <u>Secured Claims</u>

RBC Mortgage Company filed a secured Proof of Claim on behalf of BAC Home Loans Servicing, L.P. in the amount of $202,519.07 related to the Debtors' Residence. Wells Fargo filed a secured Proof of Claim in the amount of $250,842.19 related to the Debtors' Residence.

National City Mortgage filed a secured Proof of Claim in the amount of $125,723.50 related to the Debtors' Barbara Road Property.

M&I filed a secured Proof of Claim in the amount of $85,255.04 related to the Debtors' Quail Run Property.

M&I filed a secured Proof of claim in the amount of $100,244.89 related to the Debtors' Bajada Property.

The Eklunds filed secured Proof of Claim in the amount of $112,500.00 related to the Debtors' Zaragoza Property.

ASC filed a secured Proof of Claim in the amount of $444,221.84 related to the Debtors' Yavapai Property.

ASC filed a secured Proof of Claim in the amount of $465,943.79 related to the Debtors' Corrine Property.

Chase filed a secured Proof of Claim in the amount of $167,801.16 related to the Debtors' Starlight Property.

Duane Wyles filed a secured Proof of Claim in the amount of $18,000.00 related to the Debtors' 20048 Stagecoach Property.

The Dudleys filed a secured Proof of Claim in the amount of $125,000.00 related to the Debtors' Pine View Property.

The Metzger Heirs filed a secured Proof of Claim in the amount of $78,377.26 related to the Debtors' Sierra Drive Property.

Yavapai County, Arizona, filed a secured Proof of Claim in the amount of $1,369.89 related to the Debtors' 20048 Stagecoach Property, 19957 Palo Verde Property, 19550 Palo Verde Property, 19976 Stagecoach Property, 34325 Via de Oro Property, 34255 Via de Oro Property and 20156 Stagecoach Property.

Mohave County, Arizona, filed a secured Proof of Claim in the amount of $82.24 related to the Debtors' Hoover Property.

Coconino County, Arizona filed a secured Proof of Claim in the amount to $132.26 related to the 8 Mile Property.

Maricopa County, Arizona filed a secured Proof of Claim in the amount of $1,247.85 related to the Bajada Property.

H.    Domestic Support Obligations

The Debtors have no domestic support obligations.

I.    Unsecured Claims

The Debtors anticipate the total amount of Allowed Unsecured Claims in this Class will be approximately $542,350.00 owed for business-related debt, lines of credit, personal guarantees, and credit card purchases.

J.    Claims Register

Attached hereto as Exhibit "B" is a chart reflecting the status of claims as the Debtors are presently aware.

## VI.    CLASSIFICATION

THE FOLLOWING STATEMENTS CONCERNING THE PLAN ARE MERELY A SUMMARY OF THE PLAN AND ARE NOT COMPLETE. THE STATEMENTS ARE QUALIFIED ENTIRELY BY EXPRESS REFERENCE TO THE PLAN. CREDITORS ARE URGED TO CONSULT WITH COUNSEL OR EACH OTHER IN ORDER TO UNDERSTAND THE PLAN FULLY. THE PLAN IS COMPLETE, INASMUCH AS IT PROPOSES A LEGALLY BINDING AGREEMENT BY THE DEBTOR. AN INTELLIGENT JUDGMENT CANNOT BE MADE WITHOUT READING IT IN FULL.

## CLASSIFICATION OF CLAIMS AND INTERESTS

### A.    Priority Claims: Class 1

Class 1-A consists of Allowed Priority Claims under 11 U.S.C. §507(a)(2) (Administrative Claims).

Class 1-B consists of Allowed Priority Claims under 11 U.S.C. §507(a)(7) (Tenant Claims).

Class 1-C consists of Allowed Priority Claims under 11 U.S.C. §507(a)(8) (Tax Claims).

### B.    Secured Claims: Class 2

Class 2-A consists of the Allowed Secured Claim of Yavapai County.

Class 2-B consists of the Allowed Secured Claim of Maricopa County.

Class 2-C consists of the Allowed Secured Claim of Mohave County.

Class 2-D consists of the Allowed Secured Claim of Coconino County.

Class 2-E consists of the Allowed Secured Claim of Countrywide Home Loans ("Countrywide") related to its lien on the Debtors' Residence.

Class 2-F consists of the Allowed Secured Claim of Wells Fargo related to its second position lien on the Debtors' Residence.

Class 2-G consists of the Allowed Secured Claim of National City Mortgage ("National City") related to its lien on the Barbara Road Property.

Class 2-H consists of the Allowed Secured Claim of M&I Marshall & Ilsley Bank ("M&I") related to its lien on the Quail Run Property.

Class 2-I consists of the Allowed Secured Claim of M&I related to its lien on the Bajada Property.

Class 2-J consists of the Allowed Secured Claim of Alton and Yvonne Eklund related to its lien on the Zaragoza Property.

Class 2-K consists of the Allowed Secured Claim of America's Servicing Company ("ASC") related to its lien on the Yavapai Property.

Class 2-L consists of the Allowed Secured Claim of ASC related to its lien on the Corrine Property.

Class 2-M consists of the Allowed Secured Claim of Chase Home Mortgage ("Chase") related to its lien on the Starlight Property.

Class 2-N consists of the Allowed Secured Claim of Duane Wyles related to its lien on the 20048 Stagecoach Property.

Class 2-O consists of the Allowed Secured Claim of Elwood and Martha Dudley related to its lien on the Pine View Property.

Class 2-P consists of the Allowed Secured Claim of Janet M. Quinton, Pamela Lane and William Lane, the heirs of Dorothy A. Metzger (the "Metzger Heirs") related to their lien on the Sierra Drive Property.

**C.** **General Unsecured Claims: Class 3**

Class 3-A consists of the Allowed Unsecured Claims of Creditors of the Debtors.

**D.** **Debtors' Interest: Class 4**

Class 4-A consists of the Allowed Interest of the Debtors.

**VII. IMPAIRMENT OF CLASSES**

Class 1-A, 1-B and 1-C are unimpaired under the Plan. All other classes are impaired, as that term is defined in 11 U.S.C. §1124.

**VIII. TREATMENT OF CLASSES**

**A.** **Priority Claims: Class 1**

**1.** **Administrative Claims: 1-A**

This Class consists of Allowed Priority Claims under 11 U.S.C. §507(a)(2) (Administrative Claims) related to the Debtors. Unless they agree to an alternative form of treatment, the Allowed Claims of Class 1-A shall be paid in full, in cash, by the earlier of the Effective Date or the date that such are allowed and ordered paid by the Court. Any Class 1-A Claim not allowed as of the Effective Date shall be paid as soon thereafter as they are allowed by the Court according to the terms of this Class. The Allowed Administrative Claim of counsel for the

Debtors that has not been paid as of the Effective Date, shall be paid in monthly payments of principal and interest, with interest at 8%, until paid in full.

## 2. **Tenant Claims: 1-B**

Class 1-B consists of Allowed Priority Claims under 11 U.S.C. §507(a)(7) relating to tenant security deposits, which includes: unsecured claims of individuals, to the extent of $2,425.00 for each such individual, arising from the deposit, before the commencement of the case, of money in connection with the purchase, lease, or rental of property...for the personal, family, or household use of such individuals, that were not delivered or provided. The Corrine Property is leased to Leo Martinez and Danielle Furtado; the Black Mountain Property is leased to Albert Dipasquale; the Quail Run Property is leased to Rich Bailey and Tiffany Hughes; the Zaragoza Property is leased to Louis and Dawn Duren and the Bajada Property is leased to Donna Cabral. To the extent the Debtors retain a property and that any tenant has provided the Debtors a deposit relating to the lease of any real property that falls within the $2,425.00 debt limitations, the tenant's deposit rights shall be preserved and the Debtors shall perform and act with the deposit in accordance with the terms of the pre-petition lease. Any deposit that exceeds the $2,425.00 dollar limitation or definitional limitations set forth in 11 U.S.C. §507(a)(7) shall be treated as a general unsecured claim under Class 3-A.

## 3. **Tax Claims: 1-C**

Class 1-C consists of Allowed Priority Claims under 11 U.S.C. §507(a)(8)-tax claims. The Debtors do not anticipate that any Claims will exist in this Class. As provided in 11 U.S.C. §1129(a)(9)(C), unless they agree to an alternative form of treatment, the Allowed Priority Claims of Class 1-C shall be paid in full, in cash, in regular installment payments of a total value, as of the Effective Date of the Plan, equal to the Allowed Priority Claim, over a period ending five (5) years after the Petition Date, and in a manner that is not less favorable than the most favored non-priority unsecured claim provided for by the Plan (other than cash payments made to a class of creditors under §1122(b)). Any Allowed Priority Claims will receive interest at the Tax Claim Rate. Any Class 1-C Claim not allowed as of the Effective Date shall be paid as soon thereafter as they are allowed by the Court according to the terms of this Class.

The Arizona Department of Revenue ("ADOR") filed an unsecured priority proof of claim in the amount of $1,478.00 based on estimated taxes for 2008. All of this proof of claim is based upon estimates by the ADOR. The Debtors prepared and filed the appropriate returns, so the ADOR will shortly file an amended proof of claim. To the extent there is a dispute between the Debtors and the ADOR as to the amount of the ADOR's priority claim, the Debtors will file an objection to the proof of claim.

The Internal Revenue Service ("IRS") filed an unsecured priority proof of claim in the amount of $4,762.25 based on estimated taxes for 2008. All of this proof of claim is based upon estimates by the IRS. The Debtors prepared and filed the appropriate returns, so the IRS will shortly file an amended proof of claim. To the extent there is a dispute between the Debtors and the IRS as to the amount of the IRS' priority claim, the Debtors will file an objection to the proof of claim.

**B.** **Secured Claims: Class 2**

**1.** **Yavapai County: Class 2-A**

This Class consists of the Allowed Secured Claim held by Yavapai County for real property taxes owing on the Debtors' Residence, Barbara Road Property, Quail Run Property, Zaragoza Property, Black Mountain Property, Yavapai Property, Corrine Property, Starlight Property, 20048 Stagecoach Property, Pine View Property, Sierra Drive Property, 19557 Palo Verde Property, 19550 Palo Verde Property, 20156 Stagecoach Property, 19976 Stagecoach Property, 34325 Via de Oro Property and 34255 Via de Oro Property as of the Effective Date. Yavapai County filed a Proof of Claim dated July 1, 2009 in the amount of $1,369.89 representing 2008 real property taxes for the 20048 Stagecoach Property, 20156 Stagecoach Property, 19557 Palo Verde Property, 19550 Palo Verde Property, 19976 Stagecoach Property, 34325 Via de Oro Property and 34255 Via de Oro Property. Yavapai County will retain its liens on the 20048 Stagecoach Property, 19557 Palo Verde Property, 19550 Palo Verde Property, 20156 Stagecoach Property, 19976 Stagecoach Property, 34325 Via de Oro Property and 34255 Via de Oro Property and will be paid its Allowed Secured Claim as follows:

The Debtors' Plan provides an alternative proposal for these properties whether the property can either be written down to the value of the property and thus the Debtors

will retain ownership of the property and make payments to the secured creditors, or the secured creditors will be given stay relief and they can then foreclose on the property or the Debtors will execute a deed in lieu of foreclose to expedite this transfer. As to each property where the Debtors retains ownership: (a) all real property taxes that became due prior to the Effective Date which were not paid as of the Effective Date, shall be paid in equal monthly installments over a period of 12 months from the Effective Date, (b) all real property taxes that became due prior to the Effective Date shall bear interest at the state law rate from the date the taxes became due, (c) the Reorganized Debtors shall pay any real property taxes which accrue and become due after the Effective Date as said amounts become due and payable pursuant to state law, and (d) the Reorganized Debtors may prepay any of these Allowed Secured Claims at any time without penalty. As to each property where the secured creditor will receive stay relief and foreclose its interest in the property: (a) any real property taxes that are owing on the property will continue to attach to the property, (b) shall bear interest at the state law tax rate, (c) shall be paid by the creditor foreclosing its interest in the property, and (d) the Debtors will have no further liability for these taxes upon the foreclosure by the secured creditor.

    **2.**    **Maricopa County: Class 2-B**

This Class consists of the Allowed Secured Claim held by Maricopa County for real property taxes owing on the Bajada Property as of the Effective Date. Maricopa County filed a Proof of Claim dated September 29, 2009 in the amount of $1,247.85 representing 2008 real property taxes and 2009 estimated real property taxes for the Bajada Property. Maricopa County will retain its liens on the Bajada Property and will be paid its Allowed Secured Claim as follows:

The Debtors' Plan provides an alternative proposal for these properties whether the property can either be written down to the value of the property and thus the Debtors will retain ownership of the property and make payments to the secured creditors, or the secured creditors will be given stay relief and they can then foreclose on the property or the Debtors will execute a deed in lieu of foreclose to expedite this transfer. As to each property where the Debtors retains ownership: (a) all real property taxes that became due prior to the Effective Date which were not paid as of the Effective Date, shall be paid in equal monthly installments over a period of 12

months from the Effective Date, (b) all real property taxes that became due prior to the Effective Date shall bear interest at the state law rate from the date the taxes became due, (c) the Reorganized Debtors shall pay any real property taxes which accrue and become due after the Effective Date as said amounts become due and payable pursuant to state law, and (d) the Reorganized Debtors may prepay any of these Allowed Secured Claims at any time without penalty.  As to each property where the secured creditor will receive stay relief and foreclose its interest in the property: (a) any real property taxes that are owing on the property will continue to attach to the property, (b) shall bear interest at the state law tax rate, (c) shall be paid by the creditor foreclosing its interest in the property, and (d) the Debtors will have no further liability for these taxes upon the foreclosure by the secured creditor.

### 3.    Mohave County:  Class 2-C

This Class consists of the Allowed Secured Claim held by Mohave County for real property taxes owing on the Hoover Property as of the Effective Date.  Mohave County filed a Proof of Claim dated July 21, 2009 in the amount of $82.24 representing 2008 real property taxes for the Hoover Property.  Mohave County will retain its lien on the Hoover Property and will be paid its Allowed Secured Claim as follows:

The Debtors' Plan provides an alternative proposal for these properties whether the property can either be written down to the value of the property and thus the Debtors will retain ownership of the property and make payments to the secured creditors, or the secured creditors will be given stay relief and they can then foreclose on the property or the Debtors will execute a deed in lieu of foreclose to expedite this transfer.  As to each property where the Debtors retains ownership: (a) all real property taxes that became due prior to the Effective Date which were not paid as of the Effective Date, shall be paid in equal monthly installments over a period of 12 months from the Effective Date, (b) all real property taxes that became due prior to the Effective Date shall bear interest at the state law rate from the date the taxes became due, (c) the Reorganized Debtors shall pay any real property taxes which accrue and become due after the Effective Date as said amounts become due and payable pursuant to state law, and (d) the Reorganized Debtors may prepay any of these Allowed Secured Claims at any time without penalty.  As to each property

where the secured creditor will receive stay relief and foreclose its interest in the property: (a) any real property taxes that are owing on the property will continue to attach to the property, (b) shall bear interest at the state law tax rate, (c) shall be paid by the creditor foreclosing its interest in the property, and (d) the Debtors will have no further liability for these taxes upon the foreclosure by the secured creditor.

### 4. Coconino County: Class 2-D

This Class consists of the Allowed Secured Claim held by Coconino County for real property taxes owing on the 8 Mile Property as of the Effective Date. Coconino County filed a Proof of Claim dated July 30, 2009 in the amount of $132.26 representing 2008 real property taxes for the 8 Mile Property. Coconino County will retain its liens on the 8 Mile Property and will be paid its Allowed Secured Claim as follows:

The Debtors' Plan provides an alternative proposal for these properties whether the property can either be written down to the value of the property and thus the Debtors will retain ownership of the property and make payments to the secured creditors, or the secured creditors will be given stay relief and they can then foreclose on the property or the Debtors will execute a deed in lieu of foreclose to expedite this transfer. As to each property where the Debtors retains ownership: (a) all real property taxes that became due prior to the Effective Date which were not paid as of the Effective Date, shall be paid in equal monthly installments over a period of 12 months from the Effective Date, (b) all real property taxes that became due prior to the Effective Date shall bear interest at the state law rate from the date the taxes became due, (c) the Reorganized Debtors shall pay any real property taxes which accrue and become due after the Effective Date as said amounts become due and payable pursuant to state law, and (d) the Reorganized Debtors may prepay any of these Allowed Secured Claims at any time without penalty. As to each property where the secured creditor will receive stay relief and foreclose its interest in the property: (a) any real property taxes that are owing on the property will continue to attach to the property, (b) shall bear interest at the state law tax rate, (c) shall be paid by the creditor foreclosing its interest in the property, and (d) the Debtors will have no further liability for these taxes upon the foreclosure by the secured creditor.

### 5. **Countrywide: Class 2-E**

This Class consists of the Allowed Secured Claim held by Countrywide, as to its first position secured interest in the Debtors' Residence. The Debtors anticipate that they will reach a stipulation with Countrywide as to the value of its Allowed Secured Claim and the treatment of that Allowed Secured Claim under the Plan. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. RBC Mortgage Company filed a first position secured proof of claim on behalf of BAC Home Loans Servicing, L.P. in the amount of $202,519.07. The Debtors assert that Countrywide's Claim is in first position on the Debtors' Residence junior only to real property taxes. The Debtors believe the current value of the Residence is $200,000.00 based upon the current market and comparative sales. Countrywide's Allowed Secured Claim shall be allowed at the value of the Residence minus all secured debt that is senior to Countrywide's lien position. As a result, Countrywide's Allowed Secured Claim is $200,000.00 ($200,000.00 value minus $0 owing in real property taxes). This obligation will be reamortized at the Allowed Secured Claim and paid in interest only payments at 4% for 3 years, and thereafter paid in equal monthly payments of principal and interest, with interest at the rate of 5.25%, with the Allowed Secured Claim fully amortized over 20 years. Further, the funds necessary for the escrow account for real property taxes and insurance will be added to the monthly payment, the escrow account will remain in place for the payment of real property taxes and insurance, and any funds in the escrow account on the Petition Date will be used for that purpose. The Debtor may prepay this obligation without penalty at any time. Countrywide shall release its lien in the Residence once its Allowed Secured Claim has been paid. The Debtor may sell the Residence at any time without penalty so long as the balance owing on Countrywide's Allowed Secured Claim is satisfied out of the sale proceeds. The balance of Countrywide's Allowed Claim shall be treated in accordance with Class 3-A.

### 6. **Wells Fargo: Class 2-F**

This Class consists of the Allowed Secured Claim held by Wells Fargo as to its second position secured interest in the Debtors' Residence. The Debtors anticipate that they will

reach a stipulation with Wells Fargo as to the value of its Allowed Secured Claim and the treatment of that Allowed Secured Claim under the Plan. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. Wells Fargo filed a secured proof of claim in the amount of $250,842.19. The Debtors assert that Wells Fargo's Claim is in second position on the Residence junior to real property taxes and Countrywide. The Debtors believe the current value of the Residence is $200,000.00 based upon the current market and comparative sales. Wells Fargo's Allowed Secured Claim shall be allowed at the value of the Residence minus all secured debt that is senior to Wells Fargo's lien position. As a result, Wells Fargo's Allowed Secured Claim is $0.00 ($200,000.00 value minus $0 owing in real property taxes minus Countrywide's Allowed Secured Claim of $200,000.00). Wells Fargo shall release its lien on the Residence on the Effective Date. The balance of Wells Fargo's Allowed Claim shall be treated in accordance with Class 3-A.

### 7. National City Mortgage: Class 2-G

This Class consists of the Allowed Secured Claim held by National City, as to its first position secured interest in the Barbara Road Property. The Debtors anticipate that they will reach a stipulation with National City as to the value of its Allowed Secured Claim and the treatment of that Allowed Secured Claim under the Plan. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. National City filed a secured proof of claim in the amount of $125,723.50. The Debtors assert that National City's Claim is in first position on the Barbara Road Property junior only to real property taxes. National City shall retain its lien on the Barbara Road Property. National City's Allowed Secured Claim shall be allowed at the value of the Barbara Road Property minus all secured debt that is senior to National City's lien position. The Debtors believe the current value of the Barbara Road Property is $85,000.00 based upon the current market and comparative sales. As a result, National City's Allowed Secured Claim is $85,000.00 ($85,000.00 value minus $0 owing in real property taxes). This obligation will be reamortized at the Allowed Secured Claim and paid in interest only payments

at 4% for 3 years, and thereafter paid in equal monthly payments of principal and interest, with interest at the rate of 5.25%, with the Allowed Secured Claim fully amortized over 20 years. Further, the funds necessary for the escrow account for real property taxes and insurance will be added to the monthly payment, the escrow account will remain in place for the payment of real property taxes and insurance, and any funds in the escrow account on the Petition Date will be used for that purpose. The Debtor may prepay this obligation without penalty at any time. National City shall release its lien in the Barbara Road Property once its Allowed Secured Claim has been paid. The Debtor may sell the Barbara Road Property at any time without penalty so long as the balance owing on National City's Allowed Secured Claim is satisfied out of the sale proceeds. The balance of National City's Allowed Claim shall be treated in accordance with Class 3-A.

8.    **M&I:  Class 2-H**

This Class consists of the Allowed Secured Claim held by M&I, as to its first position secured interest in the Quail Run Property. The Debtors anticipate that they will reach a stipulation with M&I as to the value of its Allowed Secured Claim and the treatment of that Allowed Secured Claim under the Plan. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. M&I filed a secured proof of claim in the amount of $85,255.04. The Debtors assert that M&I's Claim is in first position on the Quail Run Property junior only to real property taxes. M&I shall retain its lien on the Quail Run Property. M&I's Allowed Secured Claim shall be allowed at the value of the Quail Run Property minus all secured debt that is senior to M&I's lien position. The Debtors believe the current value of the Quail Run Property is $65,000.00 based upon the current market and comparative sales. As a result, M&I's Allowed Secured Claim is $65,000.00 ($65,000.00 value minus $0 owing in real property taxes). This obligation will be reamortized at the Allowed Secured Claim and paid in interest only payments at 4% for 3 years, and thereafter paid in equal monthly payments of principal and interest, with interest at the rate of 5.25%, with the Allowed Secured Claim fully amortized over 20 years. Further, the funds necessary for the escrow account for real property taxes and insurance will be added to the monthly payment, the escrow account will remain in place for the payment of real

property taxes and insurance, and any funds in the escrow account on the Petition Date will be used for that purpose. The Debtor may prepay this obligation without penalty at any time. M&I shall release its lien in the Quail Run Property once its Allowed Secured Claim has been paid. The Debtor may sell the Quail Run Property at any time without penalty so long as the balance owing on M&I's Allowed Secured Claim is satisfied out of the sale proceeds. The balance of M&I's Allowed Claim shall be treated in accordance with Class 3-A.

### 9. **M&I: Class 2-I**

This Class consists of the Allowed Secured Claim held by M&I, as to its first position secured interest in the Bajada Property. The Debtors anticipate that they will reach a stipulation with M&I as to the value of its Allowed Secured Claim and the treatment of that Allowed Secured Claim under the Plan. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. M&I filed a secured proof of claim in the amount of $100,244.89. The Debtors assert that M&I's Claim is in first position on the Bajada Property junior only to real property taxes. M&I shall retain its lien on the Bajada Property. M&I's Allowed Secured Claim shall be allowed at the value of the Bajada Property minus all secured debt that is senior to M&I's lien position. The Debtors believe the current value of the Bajada Property is $75,000.00 based upon the current market and comparative sales. As a result, M&I's Allowed Secured Claim is $73,752.15 ($75,000.00 value minus 1,247.85 owing in real property taxes). This obligation will be reamortized at the Allowed Secured Claim and paid in interest only payments at 4% for 3 years, and thereafter paid in equal monthly payments of principal and interest, with interest at the rate of 5.25%, with the Allowed Secured Claim fully amortized over 20 years. Further, the funds necessary for the escrow account for real property taxes and insurance will be added to the monthly payment, the escrow account will remain in place for the payment of real property taxes and insurance, and any funds in the escrow account on the Petition Date will be used for that purpose. The Debtor may prepay this obligation without penalty at any time. M&I shall release its lien in the Bajada Property once its Allowed Secured Claim has been paid. The Debtor may sell the Bajada Property at any time without penalty so long as the balance owing on M&I's Allowed

Secured Claim is satisfied out of the sale proceeds. The balance of M&I's Allowed Claim shall be treated in accordance with Class 3-A.

**10.** **Alton and Yvonne Eklund: Class 2-J**

This Class consists of the Allowed Secured Claim held by Alton and Yvonne Eklund (the "Eklunds"), as to their first position secured interest in the Zaragoza Property. The Debtors anticipate that they will reach a stipulation with Eklunds as to the value of its Allowed Secured Claim and the treatment of that Allowed Secured Claim under the Plan. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. The Eklunds' filed a secured proof of claim in the amount of $112,500.00. The Debtors assert that the Eklunds' Claim is in first position on the Zaragoza Property junior only to real property taxes. The Eklunds shall retain their lien on the Zaragoza Property. The Eklunds' Allowed Secured Claim shall be allowed at the value of the Zaragoza Property minus all secured debt that is senior to the Eklunds' lien position. The Debtors believe the current value of the Zaragoza Property is $85,000.00 based upon the current market and comparative sales. As a result, the Eklunds' Allowed Secured Claim is $85,000.00 ($85,000.00 value minus $0 owing in real property taxes). This obligation will be reamortized at the Allowed Secured Claim and paid in interest only payments at 4% for 3 years, and thereafter paid in equal monthly payments of principal and interest, with interest at the rate of 5.25%, with the Allowed Secured Claim fully amortized over 20 years. Further, the funds necessary for the escrow account for real property taxes and insurance will be added to the monthly payment, the escrow account will remain in place for the payment of real property taxes and insurance, and any funds in the escrow account on the Petition Date will be used for that purpose. The Debtor may prepay this obligation without penalty at any time. Eklunds shall release its lien in the Zaragoza Property once its Allowed Secured Claim has been paid. The Debtor may sell the Zaragoza Property at any time without penalty so long as the balance owing on Eklunds's Allowed Secured Claim is satisfied out of the sale proceeds. The balance of Eklunds's Allowed Claim shall be treated in accordance with Class 3-A.

### 11. America's Servicing Company: Class 2-K

This Class consists of the Allowed Secured Claim held by ASC, as to its first position secured interest in the Yavapai Property. The Debtors anticipate that they will reach a stipulation with ASC as to the value of its Allowed Secured Claim and the treatment of that Allowed Secured Claim under the Plan. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. ASC filed a secured proof of claim in the amount of $444,221.84. The Debtors assert that ASC's Claim is in first position on the Yavapai Property junior only to real property taxes. ASC shall retain its lien on the Yavapai Property. ASC's Allowed Secured Claim shall be allowed at the value of the Yavapai Property minus all secured debt that is senior to ASC's lien position. The Debtors believe the current value of the Yavapai Property is $145,000.00 based upon the current market and comparative sales. As a result, ASC's Allowed Secured Claim is $145,000.00 ($145,000.00 value minus $0 owing in real property taxes). This obligation will be reamortized at the Allowed Secured Claim and paid in interest only payments at 4% for 3 years, and thereafter paid in equal monthly payments of principal and interest, with interest at the rate of 5.25%, with the Allowed Secured Claim fully amortized over 20 years. Further, the funds necessary for the escrow account for real property taxes and insurance will be added to the monthly payment, the escrow account will remain in place for the payment of real property taxes and insurance, and any funds in the escrow account on the Petition Date will be used for that purpose. The Debtor may prepay this obligation without penalty at any time. ASC shall release its lien in the Yavapai Property once its Allowed Secured Claim has been paid. The Debtor may sell the Yavapai Property at any time without penalty so long as the balance owing on ASC's Allowed Secured Claim is satisfied out of the sale proceeds. The balance of ASC's Allowed Claim shall be treated in accordance with Class 3-A.

### 12. America's Servicing Company: Class 2-L

This Class consists of the Allowed Secured Claim held by ASC, as to its first position secured interest in the Corrine Property. The Debtors anticipate that they will reach a stipulation with ASC as to the value of its Allowed Secured Claim and the treatment of that Allowed

Secured Claim under the Plan. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. ASC filed a secured proof of claim in the amount of $465,943.79. The Debtors assert that ASC's Claim is in first position on the Corrine Property junior only to real property taxes. ASC shall retain its lien on the Corrine Property. ASC's Allowed Secured Claim shall be allowed at the value of the Corrine Property minus all secured debt that is senior to ASC's lien position. The Debtors believe the current value of the Corrine Property is $175,000.00 based upon the current market and comparative sales. As a result, ASC's Allowed Secured Claim is $175,000.00 ($175,000.00 value minus $0 owing in real property taxes). This obligation will be reamortized at the Allowed Secured Claim and paid in interest only payments at 4% for 3 years, and thereafter paid in equal monthly payments of principal and interest, with interest at the rate of 5.25%, with the Allowed Secured Claim fully amortized over 20 years. Further, the funds necessary for the escrow account for real property taxes and insurance will be added to the monthly payment, the escrow account will remain in place for the payment of real property taxes and insurance, and any funds in the escrow account on the Petition Date will be used for that purpose. The Debtor may prepay this obligation without penalty at any time. ASC shall release its lien in the Corrine Property once its Allowed Secured Claim has been paid. The Debtor may sell the Corrine Property at any time without penalty so long as the balance owing on ASC's Allowed Secured Claim is satisfied out of the sale proceeds. The balance of ASC's Allowed Claim shall be treated in accordance with Class 3-A.

13. **Chase Home Mortgage:  Class 2-M**

This Class consists of the Allowed Secured Claim held by Chase, as to its first position secured interest in the Starlight Property. The Debtors anticipate that they will reach a stipulation with Chase as to the value of its Allowed Secured Claim and the treatment of that Allowed Secured Claim under the Plan. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. Chase filed a secured claim in the amount of $167,801.16. The Debtors assert that Chase's Claim is in first position on the Starlight Property

junior only to real property taxes. Chase shall retain its lien on the Starlight Property. Chase's Allowed Secured Claim shall be allowed at the value of the Starlight Property minus all secured debt that is senior to Chase's lien position. The Debtors believe the current value of the Starlight Property is $80,000.00 based upon the current market and comparative sales. As a result, Chase's Allowed Secured Claim is $80,000.00 ($80,000.00 value minus $0 owing in real property taxes). This obligation will be reamortized at the Allowed Secured Claim and paid in interest only payments at 4% for 3 years, and thereafter paid in equal monthly payments of principal and interest, with interest at the rate of 5.25%, with the Allowed Secured Claim fully amortized over 20 years. Further, the funds necessary for the escrow account for real property taxes and insurance will be added to the monthly payment, the escrow account will remain in place for the payment of real property taxes and insurance, and any funds in the escrow account on the Petition Date will be used for that purpose. The Debtor may prepay this obligation without penalty at any time. Chase shall release its lien in the Starlight Property once its Allowed Secured Claim has been paid. The Debtor may sell the Starlight Property at any time without penalty so long as the balance owing on Chase's Allowed Secured Claim is satisfied out of the sale proceeds. The balance of Chase's Allowed Claim shall be treated in accordance with Class 3-A.

### 14.   Duane Wyles/Yavapai Title Agency, Inc.:  Class 2-N

This Class consists of the Allowed Secured Claim held by Duane Wyles ("Wyles"), as to his first position secured interest in the 20048 Stagecoach Property. The Debtors anticipate that they will reach a stipulation with Wyles as to the value of its Allowed Secured Claim and the treatment of that Allowed Secured Claim under the Plan. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. Wyles filed a secured proof of claim in the amount of $18,000.00. The Debtors assert that Wyles' Claim is in first position on the 20048 Stagecoach Property junior only to real property taxes. Wyles shall retain his lien position on the 20048 Stagecoach Property. Wyles' Allowed Secured Claim shall be allowed at the value of the 20048 Stagecoach Property minus all secured debt that is senior to Wyles' lien position. The Debtors believe the current value of the 20048 Stagecoach Property is $8,000.00 based upon the current market and comparative sales. As a result, Wyles' Allowed Secured Claim is $7,633.84 ($8,000.00

value minus $366.16 owing in real property taxes). This obligation will be reamortized at the Allowed Secured Claim and paid in interest only payments at 4% for 3 years, and thereafter paid in equal monthly payments of principal and interest, with interest at the rate of 5.25%, with the Allowed Secured Claim fully amortized over 20 years. Further, the funds necessary for the escrow account for real property taxes and insurance will be added to the monthly payment, the escrow account will remain in place for the payment of real property taxes and insurance, and any funds in the escrow account on the Petition Date will be used for that purpose. The Debtor may prepay this obligation without penalty at any time. Wyles shall release its lien in the 20048 Stagecoach Property once its Allowed Secured Claim has been paid. The Debtor may sell the 20048 Stagecoach Property at any time without penalty so long as the balance owing on Wyles's Allowed Secured Claim is satisfied out of the sale proceeds. The balance of Wyles's Allowed Claim shall be treated in accordance with Class 3-A.

### 15.  **Elwood and Martha Dudley: Class 2-O**

This Class consists of the Allowed Secured Claim held by Elwood and Martha Dudley (the "Dudleys"), as to their first position secured interest in the Pine View Property. The Debtors anticipate that they will reach a stipulation with Dudleys as to the value of its Allowed Secured Claim and the treatment of that Allowed Secured Claim under the Plan. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. The Dudleys filed a secured proof of claim in the amount of $125,000.00. The Debtors assert that the Dudleys' Claim is in first position on the Pine View Property junior only to real property taxes. The Dudleys shall retain their lien on the Pine View Property. The Dudleys' Allowed Secured Claim shall be allowed at the value of the Pine View Property minus all secured debt that is senior to the Dudleys' lien position. The Debtors believe the current value of the Pine View Property is $60,000.00 based upon the current market and comparative sales. As a result, the Dudleys' Allowed Secured Claim is $60,000.00 ($60,000.00 value minus $0 owing in real property taxes). This obligation will be reamortized at the Allowed Secured Claim and paid in interest only payments at 4% for 3 years, and thereafter paid in equal monthly payments of principal and interest, with interest at the rate of 5.25%, with the Allowed Secured Claim fully amortized over 20 years. Further, the funds necessary for the

escrow account for real property taxes and insurance will be added to the monthly payment, the escrow account will remain in place for the payment of real property taxes and insurance, and any funds in the escrow account on the Petition Date will be used for that purpose. The Debtor may prepay this obligation without penalty at any time. Dudleys shall release its lien in the Pine View Property once its Allowed Secured Claim has been paid. The Debtor may sell the Pine View Property at any time without penalty so long as the balance owing on Dudleys's Allowed Secured Claim is satisfied out of the sale proceeds. The balance of Dudleys's Allowed Claim shall be treated in accordance with Class 3-A.

### 16. The Metzger Heirs: Class 2-P

This Class consists of the Allowed Secured Claim held by Janet M. Quinton, Pamela Lane and William Lane, the heirs of Dorothy A. Metzger (the "Metzger Heirs"), as to their first position secured interest in the Sierra Drive Property. The Debtors anticipate that they will reach a stipulation with Metzger Heirs as to the value of its Allowed Secured Claim and the treatment of that Allowed Secured Claim under the Plan. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. The Metzger Heirs filed a secured proof of claim in the amount of $78,377.26. The Debtors assert that the Metzger Heirs Claim is in first position on the Sierra Drive Property junior only to real property taxes. The Metzger Heirs shall retain their lien on the Sierra Drive Property. The stipulation with the Metzger Heirs provides that the automatic stay shall be immediately lifted and the Metzger Heirs may either foreclose their interest in the Sierra Drive Property through trustee sale or the Debtors shall provide the Metzger Heirs a deed in lieu of foreclosure. Such stipulation is specifically incorporated herein as approved by the Court and to the extent of any inconsistency between the treatment herein and the treatment under the stipulation as approved by the Court, the terms of the stipulation as approved by the Court control. The balance of the Metzger Heirs' Allowed Claim, if any, shall be treated in accordance with Class 3-A.

### C. Unsecured Claims: Class 3

### 1. General Unsecured Claims: Class 3-A

Class 3-A consists of the Allowed Unsecured Claims of Creditors. Class 3-A Creditors shall be paid a pro-rata share from the Debtors' Excess Cash Flow, on a quarterly basis, in

an amount sufficient to fund the value of the Debtors' Liquidation Equity (as calculated in the Debtors' Disclosure Statement), after all senior Allowed Claims have been paid in accordance with the terms of the Plan. Any Allowed Unsecured Claims that are determined to be non-dischargeable will continue to receive a pro-rata distribution of the Excess Cash Flow until satisfied in full.

### D.    Debtors' Interest: Class 4

#### 1.    Debtors' Interest:  Class 4-A

Pursuant to §1129(a)(15) and (b)(2)(B)(ii) of the Bankruptcy Code, the Debtors shall retain their interest in all estate property in consideration of their funding of Allowed Claims and shall receive all exempt property.

## IX.    LIQUIDATION ANALYSIS

The following is a Liquidation Analysis indicating what the Debtors believe creditors would receive in the event of a liquidation. The figures for "market value" and "liquidation value" are the Debtors' best estimate on what these assets are worth on a market or liquidation basis.

| Asset | Scheduled Value | Liquidation Value | Exemption | Secured Claim | Equity |
|---|---|---|---|---|---|
| Residence | 200,000 | 200,000[1] | 150,000 | 452,000 | 0 |
| Barbara Road Property | 85,000 | 76,500[1] | 0 | 128,000 | 0 |
| Quail Run Property | 65,000 | 58,500[1] | 0 | 87,000 | 0 |
| Bajada Property | 75,000 | 67,500[1] | 0 | 102,000 | 0 |
| Zaragoza Property | 85,000 | 76,500[1] | 0 | 113,000 | 0 |
| Black Mountain Property | 15,000 | 15,000[1] | 0 | 15,000[2] | 0 |
| Yavapai Property | 145,000 | 130,050[1] | 0 | 430,000 | 0 |
| Corrine Property | 175,000 | 157,500[1] | 0 | 440,000 | 0 |
| Starlight Property | 80,000 | 72,000[1] | 0 | 160,000 | 0 |
| 20048 Stagecoach Property | 8,000 | 7,200[1] | 0 | 18,000 | 0 |
| Pine View Property | 60,000 | 54,000[1] | 0 | 125,000 | 0 |
| Sierra Drive Property | 85,000 | 76,500[1] | 0 | 79,000 | 0 |
| 19957 Palo Verde Property | 5,000 | 4,500[1] | 0 | 5,000[2] | 0 |
| 19950 Palo Verde Property | 5,000 | 4,500[1] | 0 | 5,000[2] | 0 |
| 20156 Stagecoach Property | 5,000 | 4,500[1] | 0 | 5,000[2] | 0 |
| 19976 Stagecoach Property | 5,000 | 4,500[1] | 0 | 5,000[2] | 0 |
| 34325 Via de Oro Property | 5,000 | 4,500[1] | 0 | 5,000[2] | 0 |
| 34255 Via de Oro Property | 5,000 | 4,500[1] | 0 | 5,000[2] | 0 |
| 8 Mile Property | 5,000 | 4,500[1] | 0 | 5,000[2] | 0 |
| Hoover Property | 5,000 | 4,500[1] | 0 | 5,000[2] | 0 |
| Bank Accounts | 196 | 196 | 300 | 0 | 0 |
| Misc. Household Goods | 3,725 | 3,352.50[3] | 8,000 | 0 | 0 |
| Misc. Books and Pictures | 40 | 36[3] | 500 | 0 | 0 |

[1] The Debtors assume approximately 10% of value for sales costs and commissions to sell the real property.
[2] ASHR received a secured interest in this property to secure payment of the Debtors' legal fees.
[3] The Debtors assume 10% cost of sale on liquidation.

| | | | | |
|---|---|---|---|---|
| Misc. Wearing Apparel | 300 | $270^3$ | 1,000 | 0 | 0 |
| Wedding Rings | 900 | $810^3$ | 2,000 | 0 | 0 |
| 6 Bicycles, Sewing Machine, 5 Bibles, 11 Firearms | 1,105 | $994.50^3$ | 1,000 | 0 | 0 |
| Piano and other musical instruments | 300 | $270^3$ | 500 | 0 | 0 |
| Golf Clubs (child-sized) | 20 | $18^3$ | 0 | 0 | 18 |
| Misc. Sports/Recreational Equipment | 875 | $787.50^3$ | 0 | 0 | 787.50 |
| Term Life Insurance Policy | 0 | 0 | Unknown | 0 | 0 |
| 401(k) | 11,300 | 11,300 | 11,300 | 0 | 0 |
| Rollover IRA | 56,757 | 56,757 | 56,757 | 0 | 0 |
| The Bowman Empire Trust dated February 1, 1997 | Unknown | 0 | 0 | 0 | 0 |
| 2005 Chevy Express Van | 7,000 | $6,300^3$ | 5,000 | 0 | 0 |
| 1991 Chevy 1500 Truck | 1,500 | $1,350^3$ | 5,000 | 0 | 0 |
| 16' Flatbed Trailer | 300 | $270^3$ | 0 | 0 | 0 |
| Miscellaneous Office Equipment and Supplies | 460 | $414^3$ | 0 | 0 | 414 |
| Dog, Cat, Rabbit | Unknown | Unknown | Unknown | 0 | 0 |
| Food, Fuel, Provisions | 739 | 739 | 739 | 0 | 0 |
| Wages/Salaries | Unknown | Unknown | Unknown | 0 | 0 |
| | | | | | |
| Liquidation Equity | | | | | $1,219.50 |

Creditors should note that on a liquidation basis, full market value for assets cannot be obtained. Further, there are costs associated with a liquidation of assets that must be paid out of any sale proceeds. The liquidation analysis does not contain an estimation of any tax liability which could be associated with the liquidation. This would lessen the recovery to creditors. **Creditors should note that after Administration Claims and Priority Claims, no Liquidation Equity exists for the benefit of general Unsecured Claims. Nevertheless, the Debtors are preserving their Liquidation Equity of $1,219.50 for the benefit of their general unsecured creditors so that they will receive a distribution under the Plan.** This analysis is provided for informational purposes only, given that the Debtors' Plan does not contemplate a liquidation in this fashion. The importance of the analysis is to illustrate that even if the Debtors' estate was liquidated, values would lessen significantly and creditors would not be paid quickly. The Debtors' Plan not only calls for the commencement of immediate payments to all creditors that will receive a distribution, it also enhances the ability to pay creditors in a greater amount more quickly.

## X. DISPOSABLE INCOME ANALYSIS

Pursuant to §1129(a)(15) of the Bankruptcy Code, the Court shall confirm the Plan only if:

in a case in which the debtors is an individual and in which the holder of an Allowed Unsecured Claim objects to the confirmation of the Plan, what the holder of such Allowed Unsecured Claim shall receive under the Plan is either (A) the value, as of the Effective Date of the Plan, of the property to be distributed under the Plan on account of such Allowed Unsecured Claim is not less than the amount of such Allowed Unsecured Claim, or (B) the value of the property to be distributed under the Plan is not less than the projected disposable income of the Debtors (as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the Plan, or during the period for which the Plan provides payments, whichever is longer.

Section 1325(b)(2) defines disposable income as current monthly income received by the Debtors (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable non-bankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and (ii) for charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

The Debtors provided a calculation of their current monthly income with their Bankruptcy Schedules. Pursuant to that statement and the Debtors' Schedule I, the Debtors' current monthly income is $4,711.00. According to the Debtors' Schedule J, which identifies the Debtors' necessary expenses, the Debtors' expenses are $4,697.00 on a monthly basis. Thus, the Debtors' disposable income is $14 per month, and such monthly amount over five years is $840. **Accordingly, creditors should note that the amount to be disbursed to satisfy § 1129(a)(15) of the Bankruptcy Code to general Unsecured Claims is $840. The Debtors' Plan provides that the Debtors will pay their Administrative Claims and Priority Claims an agreed upon amount and**

distribution to their general unsecured claims the Liquidation Equity of $1,219.50, thus the Debtors are paying more than is required to satisfy § 1129(a)(15).

## XI.     EFFECT OF CONFIRMATION

Because the Debtors are individuals, pursuant to §1141(d)(5) of the Bankruptcy Code, Confirmation of the Plan does not provide the discharge for the Debtors.  The Debtors will move for the entry of a final decree after the Debtors have provided for the implementation of the Plan, and the final decree will contain the language providing the Debtors their discharge and such final decree will discharge any and all debts of the Debtors, that arose any time before the entry of the Confirmation Order, including, but not limited to, all principal and all interest accrued thereon, pursuant to §1141(d) of the Bankruptcy Code.  The discharge shall be effective as to each Claim, regardless of whether a proof of claim thereon was filed, whether the Claim is an Allowed Claim, or whether the holder thereof votes to accept the Plan.

In addition, any pre-confirmation obligations of the Debtors dealt with in the Plan shall be considered New Obligations of the Debtors, and these New Obligations shall not be considered in default unless and until the Reorganized Debtors default on the New Obligations pursuant to the terms of the Plan.  The New Obligations provided for in the Plan shall be in the place of, and completely substitute for, any pre-Confirmation obligations of the Debtors and, once the Plan is confirmed, the only obligations of the Debtors shall be such New Obligations as provided for under the Plan.

## XII.    IMPLEMENTATION AND FUNDING OF DEBTORS' PLAN

The Plan will be funded by the Debtors' post-petition earnings, and Excess Cash Flow.  The Reorganized Debtors shall act as the Disbursing Agent under the Plan.

In the event any entity which possesses an Allowed Secured Claim, or any other lien in any of the Debtors' property for which the Plan requires the execution of any documents to incorporate the terms of the Plan, fails to provide a release of its lien or execute the necessary documents to satisfy the requirements of the Plan, the Debtors may record a copy of their Plan and the Confirmation Order with the appropriate governmental agency and such recordation shall constitute the lien release and creation of the necessary new liens to satisfy the terms of the Plan.  If the

Debtors deem advisable, they may obtain a further Order from the Court that may be recorded in order to implement the terms of the Plan.

## XIII.   TAX CONSEQUENCES

Pursuant to §1125(a)(1) of the Bankruptcy Code, the Debtors are to provide a discussion of the potential material federal tax consequences of the Plan to the Debtors, any successor to the Debtors, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the Plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether the Disclosure Statement provides adequate information, the Court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.

Neither the Debtors nor their lawyers can make any statements with regard to the tax consequences of the Plan on any of the creditors. Although they would note that to the extent the creditor is not paid in full their Allowed Claim, they should consult with their tax advisor concerning the possibility of writing off for tax purposes that portion of their Allowed Claim that is not paid. Each creditor in this case, when analyzing the Plan, should consult with its own professional advisors to determine whether or not acceptance of the Plan by the creditor will result in any adverse tax consequences to the creditor.

The Bankruptcy Tax Act generally provides that the Debtors do not have to recognize income from the discharge of indebtedness. The Plan contemplates significant discharge of indebtedness; however, because the Debtors are in bankruptcy, they will not have to recognize the discharge of indebtedness as income for tax purposes. The Debtors do not believe the Plan will cause any adverse tax consequences.

## XIV.   NON-ALLOWANCE OF PENALTIES AND FINES

No distribution shall be made under this Plan on account of, and no allowed claim, whether secured, unsecured, priority, or administrative, shall include any fine, penalty, exemplary or punitive damages, late charges or other monetary charge relating to or arising from any default or breach by

Debtors, and any claim on account thereof shall be deemed disallowed whether or not an objection to it is filed.

## XV.    **EXECUTORY CONTRACTS**

Assuming the Debtors retain ownership of the real properties, the Debtors assume the leases with the tenants relating to the Barbara Road Property, Starlight Property, Yavapai Property, Corrine Property, Black Mountain Property, Quail Run Property, Zaragoza Property and Bajada Property, and rejects all executory contracts and unexpired leases not otherwise assumed herein or by separate order of the Court. Claims for any executory contracts or unexpired leases rejected by the Debtor shall be filed no later than 10 days after the earlier of Confirmation or the date the executory contract or unexpired lease is specifically rejected. Any such Claims not timely filed and served shall be disallowed.

## XVI.    **VOTING PROCEDURE**

The Plan divides the claims of creditors and of interest-holders into separate classes. All classes of claimants are encouraged to vote; however, only the vote of holders of claims that are impaired by the Plan will have a significant impact upon the confirmation process. Generally, this includes creditors who, under the Plan, will receive less than payment in full of their claims on the Effective Date of the Plan.

All creditors entitled to vote on the Plan must cast their vote by completing, dating and signing the ballot which has been mailed to them together with the Disclosure Statement. The ballot contains instructions concerning the deadline for submitting the ballot and to what address the ballot should be mailed.

This Disclosure Statement has been approved by the Bankruptcy Court in accordance with §1125 of the Bankruptcy Code, and is provided to each person whose claim or interest has been scheduled by the Debtors, or who has filed a proof of claim or interest with respect to the Debtors or their property, each known equity interest holder and other parties-in-interest known to the Debtors. The Disclosure Statement is intended to assist creditors in evaluating the Plan and in determining whether to accept the Plan. In determining acceptance of the Plan, votes of creditors will only be counted if submitted by a creditor whose claim is duly scheduled by the Debtors as undisputed, non-

contingent and liquidated, or who has timely filed with the Court a proof of claim or proof of interest.

The Bankruptcy Court will schedule a hearing to determine whether the requirements for confirmation under the Bankruptcy Code have been met and whether the Plan has been accepted by each impaired class and by the requisite number of creditors in such class. Under §1126 of the Code, an impaired class is deemed to have accepted the Plan upon a favorable vote of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the allowed claims of class members voting on the Plan. Further, unless there is unanimous acceptance of the Plan by an impaired class, the Court must also determine that class members will receive at least as much as they would if the Debtors were liquidated under Chapter 7 of the Code.

Even if each class of creditors does not accept the Plan, the Plan can be confirmed under §1129(b) of the Code, so long as one impaired class of creditors accepts the Plan. The failure of each class to accept the Plan could very well result in a conversion of this case to a Chapter 7 or dismissal of the Chapter 11, and the secured creditors repossessing their collateral and disposing of it in a commercially reasonable manner with no obligation to unsecured creditors.

## XVII. MODIFICATION OF PLAN

In addition to their modification rights under §1127 of the Bankruptcy Code, the Debtors may amend or modify their Plan at any time prior to Confirmation without leave of the Court. The Debtors or the Reorganized Debtors may propose amendments and/or modifications of their Plan at any time subsequent to Confirmation with leave of the Court and upon notice to Creditors. After Confirmation of the Plan, the Debtors or the Reorganized Debtors may, with approval of the Court, as long as it does not materially or adversely affect the interests of Creditors, remedy any defect or omission or reconcile any inconsistencies of the Plan, or in the Confirmation Order, if any may be necessary to carry out the purposes and intent of their Plan.

## XVIII. CLOSING OF THE CASE

If the Court does not close this case on its own motion, the Reorganized Debtors will move the Court to close this case once the Plan is deemed substantially consummated. Until substantial consummation, the Reorganized Debtors will be responsible for filing pre- and post-confirmation

reports required by the United States Trustee and paying the quarterly post-confirmation fees of the United States Trustee, in cash, pursuant to 28 U.S.C. §1930, as amended. Pursuant to 11 U.S.C. §1129(a)(12), all fees payable under section 1930 of title 28, as determined by the Court at the hearing on confirmation of the Plan, will be paid, in cash, on the Effective Date.

## XIX. RETENTION OF JURISDICTION

The Court will retain jurisdiction until the Plan has been fully consummated for, including but not limited to, the following purposes:

1.     The classification of the Claims of any Creditors and the re-examination of any Claims which have been allowed for the purposes of voting, and for the determination of such objections as may be filed to the Creditor's Claims. The failure by the Debtors to object to or examine any Claim for the purpose of voting shall not be deemed to be a waiver of the Debtors' rights to object to or to re-examine the Claim in whole or in part.

2.     To determine any Claims which are disputed by the Debtors, whether such objections are filed before or after Confirmation, to estimate any Un-liquidated or Contingent Claims pursuant to 11 U.S.C. §502(c)(1) upon request of the Debtor or any holder of a Contingent or Un-liquidated Claim, and to make determination on any objection to such Claim.

3.     To determine all questions and disputes regarding title to the assets of the estate, and determination of all causes of action, controversies, disputes or conflicts, whether or not subject to action pending as of the date of Confirmation, between the Debtors and any other party, including but not limited to, any rights of the Debtors to recover assets pursuant to the provisions of the Bankruptcy Code.

4.     The correction of any defect, the curing of any omission or any reconciliation of any inconsistencies in the Plan, or the Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan.

5.     The modification of the Plan after Confirmation, pursuant to the Bankruptcy Rules and the Bankruptcy Code.

6.     To enforce and interpret the terms and conditions of the Plan.

7.     The entry of an order, including injunctions, necessary to enforce the title, rights and powers of the Debtors, and to impose such limitations, restrictions, terms and conditions of such title, right and power that this Court may deem necessary.

8.     The entry of an order concluding and terminating this case.

## XX.  DISCLAIMER

Court approval of this Disclosure Statement and the accompanying Plan of Reorganization, including exhibits, is not a certification of the accuracy of the contents thereof.  Furthermore, Court approval of these documents does not constitute the Court's opinion as to whether the Plan should be approved or disapproved.

## XXI.  RISKS

The risk of the Plan lies essentially with the Debtors' ability to maintain their income to make plan payments.

## XXII.  PROPONENTS RECOMMENDATION/ALTERNATIVES TO THE PLAN

The Debtors recommend that all creditors entitled to vote for the Plan do so.  The alternatives to confirmation of the Plan would be either conversion of this case to a case under Chapter 7 of the Bankruptcy Code or its dismissal.

Conversion will result in the appointment of a Chapter 7 trustee and, most likely, the hiring of an attorney by the trustee.  Expenses incurred in administering the Chapter 7 case will take priority in the right to payment over allowed, administrative expenses incurred in the Chapter 11 case.  Both Chapter 7 and Chapter 11 administrative expenses take priority over the payment of unsecured claims without priority.  In other words, conversion would likely decrease the net amount available to pay currently existing creditors.  Further, a Chapter 7 proceeding would not provide the Debtors with the means to pay their Priority Claims over time.

In addition, conversion could substantially delay any distribution to creditors beyond the time period for distribution defined in the Plan.  A Chapter 7 trustee is not limited to specific deadlines for closing a case and distributing assets to creditors.  It is not unusual for distributions in Chapter 7 cases to be delayed for years.  Moreover, the return on the assets of the Estate a trustee is

likely to obtain through a standard Chapter 7 liquidation could be less than the return the Plan will generate.

Dismissal of this case would leave all creditors holding unsecured claims in the position of having to institute legal proceedings to collect their debts. Moreover, outside the context of a bankruptcy case, the first creditor to collect may collect all non-exempt property, leaving nothing to be paid to remaining creditors. In addition, dismissal of this case would open the door for the Debtors to file a new bankruptcy case, which could further delay or reduce funds available to pay creditors.

For all these reasons, the Debtors urge you to vote to accept the Plan and to return your ballots in time to be counted.

DATED this 9th day of October, 2009.

AIKEN SCHENK HAWKINS & RICCIARDI P.C.

By
D. Lamar Hawkins
4742 North 24th Street
Suite 100
Phoenix, Arizona 85016-4859
Attorneys for Debtors

Timothy J. Bowman, Debtor-in-Possession

LeAnne C. Bowman, Debtor-in-Possession

COPY of the foregoing mailed, or served
via electronic notification* or fax** or if so marked,
this 7 day of October, 2009, to:

U.S. TRUSTEE'S OFFICE
230 N. First Ave., Ste. 204
Phoenix, AZ 85003-1706

Christopher R. Perry aznotices@logs.com
PERRY & SHAPIRO, LLP
3300 N. Central Ave., Suite 2200
Phoenix, AZ 85012
Attorney for: JP Morgan Chase Bank

-41-

John D. Schlotter
Maria Tsagaris
MCCALLA RAYMER, LLC
1544 Old Alabama Rd.
Roswell, GA 30076-2102
Attorney for: America's Servicing Co.

Jeremy M. Goodman jgoodman@gustlaw.com
GUST ROSENFELD P.L.C.
201 E. Washington St., Suite 800
Phoenix, AZ 85004-2327
Attorney for: Pamela Lane, Estate of Dorothy Metzger

Mark S. Bosco msb@tblaw.com
TIFFANY & BOSCO P.A.
2525 E. Camelback Rd. Suite 300
Phoenix, AZ 85016
Attorney for: National City Mortgage Co.

Ramesh Singh claims@recoverycorp.com
c/o Recovery Management Systems Corp.
25 SE 2nd Ave., Suite 1120
Miami, FL 33131-1605
Attorney for: GE Money Bank

Dean R. Prober dprober@ppr.net
POLK, PROBER & RAPHAEL
20750 Ventura Boulevard, Suite 100
Woodland Hills, CA 91364
Attorney for: BAC Home Loans

Larry O. Folks, Esq. folks@folksoconnor.com
FOLKS & O'CONNOR, PLLC
1850 North Central Avenue, Suite 1140
Phoenix, AZ 85004
Attorney for: M&I Marshall & Ilsley Bank

*S/ Bowman.T\2816801\Pleadings\DiscStmt.doc*

**AIKEN SCHENK HAWKINS & RICCIARDI P.C.**
**4742 North 24th Street**
**Suite 100**
**Phoenix, Arizona 85016-4859**
**Telephone: (602) 248-8203**
**Facsimile: (602) 248-8840**
**D. Lamar Hawkins – 013251**
**Philip R. Rupprecht – 009288**
**Christopher R. Chicoine – 025260**
**E-Mail: dlh@ashrlaw.com**
**E-Mail: prr@ashrlaw.com**
**E-Mail: crc@ashrlaw.com**
**Attorneys for Debtors**

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 Proceedings |
| TIMOTHY J. BOWMAN and LeANNE C. BOWMAN, | Case No. 2:09-bk-12983-RTBP |
| Debtors. | **DEBTORS' FIRST PLAN OF REORGANIZATION** |
| Address:      P.O. Box 26401<br>                    Prescott Valley, AZ  86312 | |
| Social Security No(s).:      xxx-xx-0616<br>                                        xxx-xx-8559 | |

Timothy J. Bowman and LeAnne C. Bowman (the "Debtors"), debtors-in-possession in the above-captioned bankruptcy estate, submit to the Court and creditors of the Debtors' estate the following Plan of Reorganization (the "Plan"), pursuant to §1121(a) of the Bankruptcy Code.

## I.      DEFINITIONS

For purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined have the meanings ascribed to them in Section I of the Plan.   Any term used in the Plan that is not defined in the Plan but is defined in the Bankruptcy Code or the Bankruptcy Rules retains the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules.   Whenever the context requires, such terms include the plural as well as the singular, the masculine gender includes the feminine gender, and the feminine gender includes the masculine gender.

As used in this Plan, the following terms have the meanings specified below:


EXHIBIT A

Administrative Claim:  A Claim for payment of an administrative expense of a kind specified in 11 U.S.C. §§503(b) or 1114(e)(2) and entitled to priority pursuant to Code §507(a)(1), including, but not limited to, (a) the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the bankruptcy estate and operating the Debtor's business, (b) all Allowed Claims of professionals appointed by the Bankruptcy Court, (c) all fees and charges assessed against the bankruptcy estate under 28 U.S.C. §1930, and (d) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under Code §546(c)(2).

ADOR:  The Arizona Department of Revenue.

Allowed Claim: Allowed Claim shall mean a Claim:

(a)  with respect to which a proof of claim has been filed with the Court within the applicable period of limitation fixed by Rule 3003 of the Rules of Bankruptcy Procedure and to which no objection to the allowance of the Claim has been filed by the Debtors or any other party or as to which any such objection has been determined by an order or judgment of the Court which is no longer subject to appeal and to which no appeal is pending, or

(b)  Scheduled in the list of creditors prepared and filed with the Court pursuant to Rule 1007(b), Rules of Bankruptcy Procedure, and not listed as disputed, contingent or un-liquidated as to the amount.

An Allowed Claim shall not include un-matured or post-petition interest, penalties, fees or costs, unless specifically stated in the Plan.  Notwithstanding §502(a) of the Code and Rules 3001 and 3003, for the purposes of the Plan, a Claim shall not be an Allowed Claim unless it satisfies the definition of Allowed Claim under this Plan.

Allowed Interest:  An Allowed Interest shall mean an Interest in the Debtors held by a person or entity, as of the Effective Date, and as to which Interest no objection has been made within the time allowed for the making of objections, or as to which such Interest is allowed by a final order, or an Interest as to which a timely and proper proof of interest has been filed, and as to which proof of interest no objection has been made within the time allowed for making objections.

Allowed Priority Claim:  The Allowed Claim of a Claimant that is entitled to priority in payment under 11 U.S.C. §507(a)(2) through (a)(8).

2

Allowed Secured Claim: An Allowed Claim to the extent that such Allowed Claim is secured by a lien which is unavoidable, on property in which the estate has an interest, to the extent of the value of such Creditor's interest in the estate's interest in such property as determined in light of the purpose of the valuation and of the proposed disposition and use of such property and determined as of the Petition Date.

Allowed Unsecured Claim: An Allowed Claim to the extent that such Allowed Claim is not secured by a lien on property in which the estate has an interest.

Bajada Property: The Debtors' real property located at 22208 W. Bajada, Wittmann, Yavapai County, Arizona 86361 (Parcel No. 503-34-013F).

Ballot: Each of the ballot forms distributed with the Disclosure Statement to holders of Impaired Claims entitled to vote as specified in this Plan in connection with the solicitation of acceptances of this Plan.

Bankruptcy Code: 11 U.S.C. §101 et seq.

Bankruptcy Court: The United States Bankruptcy Court for the District of Arizona or any other court which may have jurisdiction over this case or any proceeding arising under, in, or relating to this case.

Bankruptcy Rule: The Federal Rules of Bankruptcy Procedure as amended and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Case or proceedings therein, as the case may be.

Bar Date: The date, if any, designated by the Bankruptcy Court as the last date for filing Proofs of Claim or Interest against the Debtors.

Barbara Road Property: The Debtors' real property located at 8120 E. Barbara Road, Prescott Valley, Yavapai County, Arizona 86314 (Parcel No. 103-22-189).

Black Mountain Property: The Debtors' real property located at 15910 S. Black Mountain Road, Cordes Lakes, Yavapai County, Arizona 86333 (Parcel No. 500-32-651A).

Chapter 11: Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §1101, et seq.

Claim: (a) a right to payment, whether or not such right is reduced to judgment, liquidated, un-liquidated, fixed, contingent, matured, un-matured, disputed, undisputed, legal, equitable, secured or unsecured, which right arose or accrued prior to the date of Confirmation, or; (b) a right to an

equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, where such right arose or accrued prior to Confirmation, or; (c) a claim arising under 11 U.S.C. §502(g).

Claimant or Creditor: Any person or entity that asserts a Claim.

Class: A category of holders of Claims or Interests as described in this Plan.

Confirmation: The signing by the Court of the Confirmation Order.

Confirmation Date: The date upon which the Confirmation Order is entered upon the docket.

Confirmation Hearing: The hearing held by the Bankruptcy Court regarding confirmation of the Plan, as it may be continued from time to time.

Confirmation Order: The Order signed by the Bankruptcy Court pursuant to 11 U.S.C. §1129 confirming this Plan.

Contingent Claim: Any Claim for which a proof of claim has been filed with the Bankruptcy Court: (a) which was not filed in a sum certain, or which has not accrued and is dependent on a future event that has not occurred and may never occur, and (b) which has not been allowed on or before the Confirmation Date.

Corrine Property: The Debtors' real property located at 3316 N. Corrine Drive, Prescott Valley, Yavapai County, Arizona 86314 (Parcel No. 103-31-156).

Court: The United States Bankruptcy Court for the District of Arizona, which has jurisdiction in this case.

Debtors: Timothy J. Bowman and LeAnne C. Bowman.

Disbursing Agent: The Reorganized Debtors shall be the Disbursing Agent and shall make distributions to holders of Allowed Claims under the Plan.

Disclosure Statement: The Debtors' disclosure statement and any amendments and supplements thereto as approved by an order of the Bankruptcy Court.

Disputed Claim: A Claim which the Debtors listed as un-liquidated, disputed or contingent in its Schedules or to which an objection has been filed which has not been resolved by a final order of the Bankruptcy Court.

**Effective Date**: 30 days after the Confirmation Date. If 30 days after the Confirmation Date falls on a weekend or a holiday, the Effective Date will be the first business day thereafter.

**8 Mile Property**: The Debtors' real property located at 7483 N. 8 Mile Blvd., Williams, Coconino County, Arizona 86046 (Parcel No. 202-40-011).

**Excess Cash Flow**: Cash flow of the Debtors' post-petition income after deduction from their post-petition income as set forth in their Schedule I, all expenses as set forth in their Schedule J, including all payments to administrative, priority, and secured creditors.

**Final Order**: An order or judgment which has not been stayed.

**Hoover Property**: The Debtors' real property located at 1920 W. Hoover Drive, Meadview, Mohave County, Arizona 86337 (Parcel No. 343-07-242).

**Impaired**: When used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of Code §1124.

**Insider**: A person or entity within the definition contained at §101(31) of the Bankruptcy Code.

**IRS**: The Internal Revenue Service.

**Interest**: Any equity interest in the Debtors as of the Effective Date.

**Interest Holder**: Any person or persons owning an Interest in the Debtors as of the Effective Date.

**New Obligations**: Those debts of the Debtors which existed pre-confirmation, but which are modified by the confirmed Plan resulting in the creation of a new note. The obligations for which the Reorganized Debtors have liability under the terms of the confirmed Plan. Said new obligations shall not be considered in default unless and until the Reorganized Debtors default on said obligations after the Effective Date.

**19550 Palo Verde Property**: The Debtors' real property located at 19550 E. Palo Verde Drive, Cordes Lakes, Yavapai County, Arizona 86333 (Parcel No. 500-30-467).

**19557 Palo Verde Property**: The Debtors' real property located at 19557 E. Palo Verde Drive, Cordes Lakes, Yavapai County, Arizona 86333 (Parcel No. 500-30-463).

**19976 Stagecoach Property**: The Debtors' real property located at 19976 E. Stagecoach Trail, Cordes Lakes, Yavapai County, Arizona 86333 (Parcel No. 500-30-184).

Oversecured:  The term describing the Allowed Claim of a secured Creditor when the value of the collateral securing said Allowed Claim exceeds the amount of the debt serving as the basis for said Allowed Claim.

Person:  Any individual, corporation, partnership, joint venture, association, joint stock company, trust, unincorporated association or organization, governmental agency, or associated political subdivision.

Petition: The original petition under Chapter 11.

Petition Date: The date on which the Petition was filed, June 11, 2009.

Pine View Property:  The Debtors' real property located at 3076 N. Pine View, Prescott Valley, Yavapai County, Arizona 86314 (Parcel No. 103-06-063).

Plan: This Plan of Reorganization and any amendments or supplements thereto.

Plan Rate:  The rate of interest referred to in the Plan which is the prime rate.

Proof of Claim:  The proof of claim that must be filed by a holder of an Impaired Claim by the Bar Date.

Pro Rata:  The ratio of an Allowed Claim or Allowed Interest in a particular Class to the aggregate amount of all Allowed Claims or Allowed Interests in that Class.

Quail Run Property:  The Debtors' real property located at 20519 E. Quail Run Drive, Cordes Lakes, Yavapai County, Arizona 86333 (Parcel No. 500-04-109B).

Reorganized Debtor: The Debtors after the Effective Date.

Residence:  The Debtors' real property located at 3075 N. Pleasant View Drive, Prescott Valley, Yavapai County, Arizona 86314 (Parcel No. 103-06-058B).

Sierra Drive Property:  The Debtors' real property located on Sierra Drive, Cordes Lakes, Yavapai County, Arizona 86333 (Parcel No. 500-04-376U; 500-04-376V; 500-04-376W; 500-04-376X and 500-04-376Y).

Starlight Property:  The Debtors' real property located at 3425 N. Starlight Drive, Prescott Valley, Yavapai County, Arizona 86314 (Parcel No. 103-07-167).

Tax Claim Rate:  The rate of interest, to be determined by the Bankruptcy Court at the Confirmation Hearing, that, when applied to the amount of an Allowed Priority Claim to be paid in installments will result in such installments being of an aggregate value, as of the Effective Date,

equal to the Allowed amount of such Claim, consistent with the requirements of 11 U.S.C. §1129(a)(9). At the Confirmation Hearing, the Debtors will request the Court determine that the Tax Claim Rate is five percent per annum.

34255 Via de Oro Property: The Debtors' real property located at 34255 W. North Via de Oro Parkway, Seligman, Yavapai County, Arizona 86337 (Parcel No. 301-24-077).

34325 Via de Oro Property: The Debtors' real property located at 34325 W. North Via de Oro Parkway, Seligman, Yavapai County, Arizona 86337 (Parcel No. 301-24-076).

20048 Stagecoach Property: The Debtors' real property located at 20048/20060 E. Stagecoach Trail, Cordes Lakes, Yavapai County, Arizona 86333 (Parcel No. 500-32-971 and 500-32-970).

20156 Stagecoach Property: The Debtors' real property located at 20156 E. Stagecoach Trail, Cordes Lakes, Yavapai County, Arizona 86333 (Parcel No. 500-32-961).

Undersecured: The term describing the Allowed Claim of a secured Creditor when the value of the collateral securing said Allowed Claim is less than the debt which serves as the basis of said Allowed Claim.

Voting Deadline: The voting deadline for voting to accept or reject this Plan, as determined by the Bankruptcy Court.

Yavapai Property: The Debtors' real property located at 3201 N. Yavapai Road East, Prescott Valley, Yavapai County, Arizona 86314 (Parcel No. 103-31-254).

Zaragoza Property: The Debtors' real property located at 20239 E. Zaragoza Drive, Cordes Lakes, Yavapai County, Arizona 86333 (Parcel No. 500-32-895).

## II.  CLASSIFICATION OF CLAIMS AND INTERESTS

### A.  Priority Claims: Class 1

Class 1-A consists of Allowed Priority Claims under 11 U.S.C. §507(a)(2) (Administrative Claims).

Class 1-B consists of Allowed Priority Claims under 11 U.S.C. §507(a)(7) (Tenant Claims).

Class 1-C consists of Allowed Priority Claims under 11 U.S.C. §507(a)(8) (Tax Claims).

**B.   Secured Claims: Class 2**

Class 2-A consists of the Allowed Secured Claim of Yavapai County.

Class 2-B consists of the Allowed Secured Claim of Maricopa County

Class 2-C consists of the Allowed Secured Claim of Mohave County.

Class 2-D consists of the Allowed Secured Claim of Coconino County.

Class 2-E consists of the Allowed Secured Claim of Countrywide Home Loans ("Countrywide") related to its lien on the Debtors' Residence.

Class 2-F consists of the Allowed Secured Claim of Wells Fargo related to its second position lien on the Debtors' Residence.

Class 2-G consists of the Allowed Secured Claim of National City Mortgage ("National City") related to its lien on the Barbara Road Property.

Class 2-H consists of the Allowed Secured Claim of M&I Marshall & Ilsley Bank ("M&I") related to its lien on the Quail Run Property.

Class 2-I consists of the Allowed Secured Claim of M&I related to its lien on the Bajada Property.

Class 2-J consists of the Allowed Secured Claim of Alton and Yvonne Eklund related to its lien on the Zaragoza Property.

Class 2-K consists of the Allowed Secured Claim of America's Servicing Company ("ASC") related to its lien on the Yavapai Property.

Class 2-L consists of the Allowed Secured Claim of ASC related to its lien on the Corrine Property.

Class 2-M consists of the Allowed Secured Claim of Chase Home Mortgage ("Chase") related to its lien on the Starlight Property.

Class 2-N consists of the Allowed Secured Claim of Duane Wyles related to its lien on the 20048 Stagecoach Property.

Class 2-O consists of the Allowed Secured Claim of Elwood and Martha Dudley related to its lien on the Pine View Property.

Class 2-P consists of the Allowed Secured Claim of Janet M. Quinton, Pamela Lane and William Lane, the heirs of Dorothy A. Metzger (the "Metzger Heirs") related to their lien on the Sierra Drive Property.

**C.      General Unsecured Claims: Class 3**

Class 3-A consists of the Allowed Unsecured Claims of Creditors of the Debtors.

**D.      Debtors' Interest: Class 4**

Class 4-A consists of the Allowed Interest of the Debtors.

## III.    IMPAIRMENT OF CLASSES

Class 1-A, 1-B and 1-C are unimpaired under the Plan.  All other classes are impaired, as that term is defined in 11 U.S.C. §1124.

## IV.    TREATMENT OF CLASSES

**A.      Priority Claims: Class 1**

**1.      Administrative Claims: 1-A**

This Class consists of Allowed Priority Claims under 11 U.S.C. §507(a)(2) (Administrative Claims) related to the Debtors.  Unless they agree to an alternative form of treatment, the Allowed Claims of Class 1-A shall be paid in full, in cash, by the earlier of the Effective Date or the date that such are allowed and ordered paid by the Court.  Any Class 1-A Claim not allowed as of the Effective Date shall be paid as soon thereafter as they are allowed by the Court according to the terms of this Class.  The Allowed Administrative Claim of counsel for the Debtors that has not been paid as of the Effective Date, shall be paid in monthly payments of principal and interest, with interest at 8%, until paid in full.

**2.      Tenant Claims: 1-B**

Class 1-B consists of Allowed Priority Claims under 11 U.S.C. §507(a)(7) relating to tenant security deposits, which includes:  unsecured claims of individuals, to the extent of $2,425.00 for each such individual, arising from the deposit, before the commencement of the case, of money in connection with the purchase, lease, or rental of property...for the personal, family, or household use of such individuals, that were not delivered or provided.  The Corrine Property is leased to Leo Martinez and Danielle Furtado; the Black Mountain Property is leased to Albert

Dipasquale; the Quail Run Property is leased to Rich Bailey and Tiffany Hughes; the Zaragoza Property is leased to Louis and Dawn Duren and the Bajada Property is leased to Donna Cabral. To the extent the Debtors retain a property and that any tenant has provided the Debtors a deposit relating to the lease of any real property that falls within the $2,425.00 debt limitations, the tenant's deposit rights shall be preserved and the Debtors shall perform and act with the deposit in accordance with the terms of the pre-petition lease. Any deposit that exceeds the $2,425.00 dollar limitation or definitional limitations set forth in 11 U.S.C. §507(a)(7) shall be treated as a general unsecured claim under Class 3-A.

3. **Tax Claims:  1-C**

Class 1-C consists of Allowed Priority Claims under 11 U.S.C. §507(a)(8)-tax claims.  The Debtors do not anticipate that any Claims will exist in this Class.  As provided in 11 U.S.C. §1129(a)(9)(C), unless they agree to an alternative form of treatment, the Allowed Priority Claims of Class 1-C shall be paid in full, in cash, in regular installment payments of a total value, as of the Effective Date of the Plan, equal to the Allowed Priority Claim, over a period ending five (5) years after the Petition Date, and in a manner that is not less favorable than the most favored non-priority unsecured claim provided for by the Plan (other than cash payments made to a class of creditors under §1122(b)).  Any Allowed Priority Claims will receive interest at the Tax Claim Rate. Any Class 1-C Claim not allowed as of the Effective Date shall be paid as soon thereafter as they are allowed by the Court according to the terms of this Class.

The Arizona Department of Revenue ("ADOR") filed an unsecured priority proof of claim in the amount of $1,478.00 based on estimated taxes for 2008.  All of this proof of claim is based upon estimates by the ADOR.  The Debtors prepared and filed the appropriate returns, so the ADOR will shortly file an amended proof of claim.  To the extent there is a dispute between the Debtors and the ADOR as to the amount of the ADOR's priority claim, the Debtors will file an objection to the proof of claim.

The Internal Revenue Service ("IRS") filed an unsecured priority proof of claim in the amount of $4,762.25 based on estimated taxes for 2008.  All of this proof of claim is based upon estimates by the IRS. The Debtors prepared and filed the appropriate returns, so the IRS will shortly file an amended proof of claim.  To the extent there is a dispute between the Debtors and

the IRS as to the amount of the IRS' priority claim, the Debtors will file an objection to the proof of claim.

**B.** **Secured Claims: Class 2**

      **1.** **Yavapai County: Class 2-A**

      This Class consists of the Allowed Secured Claim held by Yavapai County for real property taxes owing on the Debtors' Residence, Barbara Road Property, Quail Run Property, Zaragoza Property, Black Mountain Property, Yavapai Property, Corrine Property, Starlight Property, 20048 Stagecoach Property, Pine View Property, Sierra Drive Property, 19557 Palo Verde Property, 19550 Palo Verde Property, 20156 Stagecoach Property, 19976 Stagecoach Property, 34325 Via de Oro Property and 34255 Via de Oro Property as of the Effective Date. Yavapai County filed a Proof of Claim dated July 1, 2009 in the amount of $1,369.89 representing 2008 real property taxes for the 20048 Stagecoach Property, 20156 Stagecoach Property, 19557 Palo Verde Property, 19550 Palo Verde Property, 19976 Stagecoach Property, 34325 Via de Oro Property and 34255 Via de Oro Property. Yavapai County will retain its liens on the 20048 Stagecoach Property, 19557 Palo Verde Property, 19550 Palo Verde Property, 20156 Stagecoach Property, 19976 Stagecoach Property, 34325 Via de Oro Property and 34255 Via de Oro Property and will be paid its Allowed Secured Claim as follows:

      The Debtors' Plan provides an alternative proposal for these properties whether the property can either be written down to the value of the property and thus the Debtors will retain ownership of the property and make payments to the secured creditors, or the secured creditors will be given stay relief and they can then foreclose on the property or the Debtors will execute a deed in lieu of foreclose to expedite this transfer. As to each property where the Debtors retains ownership: (a) all real property taxes that became due prior to the Effective Date which were not paid as of the Effective Date, shall be paid in equal monthly installments over a period of 12 months from the Effective Date, (b) all real property taxes that became due prior to the Effective Date shall bear interest at the state law rate from the date the taxes became due, (c) the Reorganized Debtors shall pay any real property taxes which accrue and become due after the Effective Date as said amounts become due and payable pursuant to state law, and (d) the Reorganized Debtors may

prepay any of these Allowed Secured Claims at any time without penalty. As to each property where the secured creditor will receive stay relief and foreclose its interest in the property: (a) any real property taxes that are owing on the property will continue to attach to the property, (b) shall bear interest at the state law tax rate, (c) shall be paid by the creditor foreclosing its interest in the property, and (d) the Debtors will have no further liability for these taxes upon the foreclosure by the secured creditor.

### 2.   **Maricopa County: Class 2-B**

This Class consists of the Allowed Secured Claim held by Maricopa County for real property taxes owing on the Bajada Property as of the Effective Date. Maricopa County filed a Proof of Claim dated September 29, 2009 in the amount of $1,247.85 representing 2008 real property taxes and 2009 estimated real property taxes for the Bajada Property. Maricopa County will retain its liens on the Bajada Property and will be paid its Allowed Secured Claim as follows:

The Debtors' Plan provides an alternative proposal for these properties whether the property can either be written down to the value of the property and thus the Debtors will retain ownership of the property and make payments to the secured creditors, or the secured creditors will be given stay relief and they can then foreclose on the property or the Debtors will execute a deed in lieu of foreclose to expedite this transfer. As to each property where the Debtors retains ownership: (a) all real property taxes that became due prior to the Effective Date which were not paid as of the Effective Date, shall be paid in equal monthly installments over a period of 12 months from the Effective Date, (b) all real property taxes that became due prior to the Effective Date shall bear interest at the state law rate from the date the taxes became due, (c) the Reorganized Debtors shall pay any real property taxes which accrue and become due after the Effective Date as said amounts become due and payable pursuant to state law, and (d) the Reorganized Debtors may prepay any of these Allowed Secured Claims at any time without penalty. As to each property where the secured creditor will receive stay relief and foreclose its interest in the property: (a) any real property taxes that are owing on the property will continue to attach to the property, (b) shall bear interest at the state law tax rate, (c) shall be paid by the creditor foreclosing its interest in the

property, and (d) the Debtors will have no further liability for these taxes upon the foreclosure by the secured creditor.

### 3. Mohave County: Class 2-C

This Class consists of the Allowed Secured Claim held by Mohave County for real property taxes owing on the Hoover Property as of the Effective Date. Mohave County filed a Proof of Claim dated July 21, 2009 in the amount of $82.24 representing 2008 real property taxes for the Hoover Property. Mohave County will retain its lien on the Hoover Property and will be paid its Allowed Secured Claim as follows:

The Debtors' Plan provides an alternative proposal for these properties whether the property can either be written down to the value of the property and thus the Debtors will retain ownership of the property and make payments to the secured creditors, or the secured creditors will be given stay relief and they can then foreclose on the property or the Debtors will execute a deed in lieu of foreclose to expedite this transfer. As to each property where the Debtors retains ownership: (a) all real property taxes that became due prior to the Effective Date which were not paid as of the Effective Date, shall be paid in equal monthly installments over a period of 12 months from the Effective Date, (b) all real property taxes that became due prior to the Effective Date shall bear interest at the state law rate from the date the taxes became due, (c) the Reorganized Debtors shall pay any real property taxes which accrue and become due after the Effective Date as said amounts become due and payable pursuant to state law, and (d) the Reorganized Debtors may prepay any of these Allowed Secured Claims at any time without penalty. As to each property where the secured creditor will receive stay relief and foreclose its interest in the property: (a) any real property taxes that are owing on the property will continue to attach to the property, (b) shall bear interest at the state law tax rate, (c) shall be paid by the creditor foreclosing its interest in the property, and (d) the Debtors will have no further liability for these taxes upon the foreclosure by the secured creditor.

### 4. Coconino County: Class 2-D

This Class consists of the Allowed Secured Claim held by Coconino County for real property taxes owing on the 8 Mile Property as of the Effective Date. Coconino County

filed a Proof of Claim dated July 30, 2009 in the amount of $132.26 representing 2008 real property taxes for the 8 Mile Property. Coconino County will retain its liens on the 8 Mile Property and will be paid its Allowed Secured Claim as follows:

The Debtors' Plan provides an alternative proposal for these properties whether the property can either be written down to the value of the property and thus the Debtors will retain ownership of the property and make payments to the secured creditors, or the secured creditors will be given stay relief and they can then foreclose on the property or the Debtors will execute a deed in lieu of foreclose to expedite this transfer. As to each property where the Debtors retains ownership: (a) all real property taxes that became due prior to the Effective Date which were not paid as of the Effective Date, shall be paid in equal monthly installments over a period of 12 months from the Effective Date, (b) all real property taxes that became due prior to the Effective Date shall bear interest at the state law rate from the date the taxes became due, (c) the Reorganized Debtors shall pay any real property taxes which accrue and become due after the Effective Date as said amounts become due and payable pursuant to state law, and (d) the Reorganized Debtors may prepay any of these Allowed Secured Claims at any time without penalty. As to each property where the secured creditor will receive stay relief and foreclose its interest in the property: (a) any real property taxes that are owing on the property will continue to attach to the property, (b) shall bear interest at the state law tax rate, (c) shall be paid by the creditor foreclosing its interest in the property, and (d) the Debtors will have no further liability for these taxes upon the foreclosure by the secured creditor.

### 5.    Countrywide:  Class 2-E

This Class consists of the Allowed Secured Claim held by Countrywide, as to its first position secured interest in the Debtors' Residence. The Debtors anticipate that they will reach a stipulation with Countrywide as to the value of its Allowed Secured Claim and the treatment of that Allowed Secured Claim under the Plan. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. RBC Mortgage Company filed a first position secured proof of claim on behalf of BAC Home Loans Servicing, L.P. in the

amount of $202,519.07. The Debtors assert that Countrywide's Claim is in first position on the Debtors' Residence junior only to real property taxes. The Debtors believe the current value of the Residence is $200,000.00 based upon the current market and comparative sales. Countrywide's Allowed Secured Claim shall be allowed at the value of the Residence minus all secured debt that is senior to Countrywide's lien position. As a result, Countrywide's Allowed Secured Claim is $200,000.00 ($200,000.00 value minus $0 owing in real property taxes). This obligation will be reamortized at the Allowed Secured Claim and paid in interest only payments at 4% for 3 years, and thereafter paid in equal monthly payments of principal and interest, with interest at the rate of 5.25%, with the Allowed Secured Claim fully amortized over 20 years. Further, the funds necessary for the escrow account for real property taxes and insurance will be added to the monthly payment, the escrow account will remain in place for the payment of real property taxes and insurance, and any funds in the escrow account on the Petition Date will be used for that purpose. The Debtor may prepay this obligation without penalty at any time. Countrywide shall release its lien in the Residence once its Allowed Secured Claim has been paid. The Debtor may sell the Residence at any time without penalty so long as the balance owing on Countrywide's Allowed Secured Claim is satisfied out of the sale proceeds. The balance of Countrywide's Allowed Claim shall be treated in accordance with Class 3-A.

### 6. Wells Fargo: Class 2-F

This Class consists of the Allowed Secured Claim held by Wells Fargo as to its second position secured interest in the Debtors' Residence. The Debtors anticipate that they will reach a stipulation with Wells Fargo as to the value of its Allowed Secured Claim and the treatment of that Allowed Secured Claim under the Plan. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. Wells Fargo filed a secured proof of claim in the amount of $250,842.19. The Debtors assert that Wells Fargo's Claim is in second position on the Residence junior to real property taxes and Countrywide. The Debtors believe the current value of the Residence is $200,000.00 based upon the current market and comparative sales. Wells Fargo's Allowed Secured Claim shall be allowed at the value of the

Residence minus all secured debt that is senior to Wells Fargo's lien position. As a result, Wells Fargo's Allowed Secured Claim is $0.00 ($200,000.00 value minus $0 owing in real property taxes minus Countrywide's Allowed Secured Claim of $200,000.00). Wells Fargo shall release its lien on the Residence on the Effective Date. The balance of Wells Fargo's Allowed Claim shall be treated in accordance with Class 3-A.

### 7. **National City Mortgage: Class 2-G**

This Class consists of the Allowed Secured Claim held by National City, as to its first position secured interest in the Barbara Road Property. The Debtors anticipate that they will reach a stipulation with National City as to the value of its Allowed Secured Claim and the treatment of that Allowed Secured Claim under the Plan. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. National City filed a secured proof of claim in the amount of $125,723.50. The Debtors assert that National City's Claim is in first position on the Barbara Road Property junior only to real property taxes. National City shall retain its lien on the Barbara Road Property. National City's Allowed Secured Claim shall be allowed at the value of the Barbara Road Property minus all secured debt that is senior to National City's lien position. The Debtors believe the current value of the Barbara Road Property is $85,000.00 based upon the current market and comparative sales. As a result, National City's Allowed Secured Claim is $85,000.00 ($85,000.00 value minus $0 owing in real property taxes). This obligation will be reamortized at the Allowed Secured Claim and paid in interest only payments at 4% for 3 years, and thereafter paid in equal monthly payments of principal and interest, with interest at the rate of 5.25%, with the Allowed Secured Claim fully amortized over 20 years. Further, the funds necessary for the escrow account for real property taxes and insurance will be added to the monthly payment, the escrow account will remain in place for the payment of real property taxes and insurance, and any funds in the escrow account on the Petition Date will be used for that purpose. The Debtor may prepay this obligation without penalty at any time. National City shall release its lien in the Barbara Road Property once its Allowed Secured Claim has been paid. The Debtor may sell the Barbara Road Property at any time without penalty so long as the balance

owing on National City's Allowed Secured Claim is satisfied out of the sale proceeds. The balance of National City's Allowed Claim shall be treated in accordance with Class 3-A.

### 8. M&I: Class 2-H

This Class consists of the Allowed Secured Claim held by M&I, as to its first position secured interest in the Quail Run Property. The Debtors anticipate that they will reach a stipulation with M&I as to the value of its Allowed Secured Claim and the treatment of that Allowed Secured Claim under the Plan. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. M&I filed a secured proof of claim in the amount of $85,255.04. The Debtors assert that M&I's Claim is in first position on the Quail Run Property junior only to real property taxes. M&I shall retain its lien on the Quail Run Property. M&I's Allowed Secured Claim shall be allowed at the value of the Quail Run Property minus all secured debt that is senior to M&I's lien position. The Debtors believe the current value of the Quail Run Property is $65,000.00 based upon the current market and comparative sales. As a result, M&I's Allowed Secured Claim is $65,000.00 ($65,000.00 value minus $0 owing in real property taxes). This obligation will be reamortized at the Allowed Secured Claim and paid in interest only payments at 4% for 3 years, and thereafter paid in equal monthly payments of principal and interest, with interest at the rate of 5.25%, with the Allowed Secured Claim fully amortized over 20 years. Further, the funds necessary for the escrow account for real property taxes and insurance will be added to the monthly payment, the escrow account will remain in place for the payment of real property taxes and insurance, and any funds in the escrow account on the Petition Date will be used for that purpose. The Debtor may prepay this obligation without penalty at any time. M&I shall release its lien in the Quail Run Property once its Allowed Secured Claim has been paid. The Debtor may sell the Quail Run Property at any time without penalty so long as the balance owing on M&I's Allowed Secured Claim is satisfied out of the sale proceeds. The balance of M&I's Allowed Claim shall be treated in accordance with Class 3-A.

### 9. M&I: Class 2-I

This Class consists of the Allowed Secured Claim held by M&I, as to its first position secured interest in the Bajada Property. The Debtors anticipate that they will reach a stipulation with M&I as to the value of its Allowed Secured Claim and the treatment of that Allowed Secured Claim under the Plan. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. M&I filed a secured proof of claim in the amount of $100,244.89. The Debtors assert that M&I's Claim is in first position on the Bajada Property junior only to real property taxes. M&I shall retain its lien on the Bajada Property. M&I's Allowed Secured Claim shall be allowed at the value of the Bajada Property minus all secured debt that is senior to M&I's lien position. The Debtors believe the current value of the Bajada Property is $75,000.00 based upon the current market and comparative sales. As a result, M&I's Allowed Secured Claim is $73,752.15 ($75,000.00 value minus 1,247.85 owing in real property taxes). This obligation will be reamortized at the Allowed Secured Claim and paid in interest only payments at 4% for 3 years, and thereafter paid in equal monthly payments of principal and interest, with interest at the rate of 5.25%, with the Allowed Secured Claim fully amortized over 20 years. Further, the funds necessary for the escrow account for real property taxes and insurance will be added to the monthly payment, the escrow account will remain in place for the payment of real property taxes and insurance, and any funds in the escrow account on the Petition Date will be used for that purpose. The Debtor may prepay this obligation without penalty at any time. M&I shall release its lien in the Bajada Property once its Allowed Secured Claim has been paid. The Debtor may sell the Bajada Property at any time without penalty so long as the balance owing on M&I's Allowed Secured Claim is satisfied out of the sale proceeds. The balance of M&I's Allowed Claim shall be treated in accordance with Class 3-A.

10.  **Alton and Yvonne Eklund:  Class 2-J**

This Class consists of the Allowed Secured Claim held by Alton and Yvonne Eklund (the "Eklunds"), as to their first position secured interest in the Zaragoza Property. The Debtors anticipate that they will reach a stipulation with Eklunds as to the value of its Allowed Secured Claim and the treatment of that Allowed Secured Claim under the Plan. In the event such a

stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. The Eklunds' filed a secured proof of claim in the amount of $112,500.00. The Debtors assert that the Eklunds' Claim is in first position on the Zaragoza Property junior only to real property taxes. The Eklunds shall retain their lien on the Zaragoza Property. The Eklunds' Allowed Secured Claim shall be allowed at the value of the Zaragoza Property minus all secured debt that is senior to the Eklunds' lien position. The Debtors believe the current value of the Zaragoza Property is $85,000.00 based upon the current market and comparative sales. As a result, the Eklunds' Allowed Secured Claim is $85,000.00 ($85,000.00 value minus $0 owing in real property taxes). This obligation will be reamortized at the Allowed Secured Claim and paid in interest only payments at 4% for 3 years, and thereafter paid in equal monthly payments of principal and interest, with interest at the rate of 5.25%, with the Allowed Secured Claim fully amortized over 20 years. Further, the funds necessary for the escrow account for real property taxes and insurance will be added to the monthly payment, the escrow account will remain in place for the payment of real property taxes and insurance, and any funds in the escrow account on the Petition Date will be used for that purpose. The Debtor may prepay this obligation without penalty at any time. Eklunds shall release its lien in the Zaragoza Property once its Allowed Secured Claim has been paid. The Debtor may sell the Zaragoza Property at any time without penalty so long as the balance owing on Eklunds's Allowed Secured Claim is satisfied out of the sale proceeds. The balance of Eklunds's Allowed Claim shall be treated in accordance with Class 3-A.

**11.** **America's Servicing Company: Class 2-K**

This Class consists of the Allowed Secured Claim held by ASC, as to its first position secured interest in the Yavapai Property. The Debtors anticipate that they will reach a stipulation with ASC as to the value of its Allowed Secured Claim and the treatment of that Allowed Secured Claim under the Plan. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. ASC filed a secured proof of claim in the amount of $444,221.84. The Debtors assert that ASC's Claim is in first position on the Yavapai

Property junior only to real property taxes. ASC shall retain its lien on the Yavapai Property. ASC's Allowed Secured Claim shall be allowed at the value of the Yavapai Property minus all secured debt that is senior to ASC's lien position. The Debtors believe the current value of the Yavapai Property is $145,000.00 based upon the current market and comparative sales. As a result, ASC's Allowed Secured Claim is $145,000.00 ($145,000.00 value minus $0 owing in real property taxes). This obligation will be reamortized at the Allowed Secured Claim and paid in interest only payments at 4% for 3 years, and thereafter paid in equal monthly payments of principal and interest, with interest at the rate of 5.25%, with the Allowed Secured Claim fully amortized over 20 years. Further, the funds necessary for the escrow account for real property taxes and insurance will be added to the monthly payment, the escrow account will remain in place for the payment of real property taxes and insurance, and any funds in the escrow account on the Petition Date will be used for that purpose. The Debtor may prepay this obligation without penalty at any time. ASC shall release its lien in the Yavapai Property once its Allowed Secured Claim has been paid. The Debtor may sell the Yavapai Property at any time without penalty so long as the balance owing on ASC's Allowed Secured Claim is satisfied out of the sale proceeds. The balance of ASC's Allowed Claim shall be treated in accordance with Class 3-A.

**12.    America's Servicing Company:  Class 2-L**

This Class consists of the Allowed Secured Claim held by ASC, as to its first position secured interest in the Corrine Property. The Debtors anticipate that they will reach a stipulation with ASC as to the value of its Allowed Secured Claim and the treatment of that Allowed Secured Claim under the Plan. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. ASC filed a secured proof of claim in the amount of $465,943.79. The Debtors assert that ASC's Claim is in first position on the Corrine Property junior only to real property taxes. ASC shall retain its lien on the Corrine Property. ASC's Allowed Secured Claim shall be allowed at the value of the Corrine Property minus all secured debt that is senior to ASC's lien position. The Debtors believe the current value of the Corrine Property is $175,000.00 based upon the current market and comparative sales. As a result, ASC's Allowed

Secured Claim is $175,000.00 ($175,000.00 value minus $0 owing in real property taxes). This obligation will be reamortized at the Allowed Secured Claim and paid in interest only payments at 4% for 3 years, and thereafter paid in equal monthly payments of principal and interest, with interest at the rate of 5.25%, with the Allowed Secured Claim fully amortized over 20 years. Further, the funds necessary for the escrow account for real property taxes and insurance will be added to the monthly payment, the escrow account will remain in place for the payment of real property taxes and insurance, and any funds in the escrow account on the Petition Date will be used for that purpose. The Debtor may prepay this obligation without penalty at any time. ASC shall release its lien in the Corrine Property once its Allowed Secured Claim has been paid. The Debtor may sell the Corrine Property at any time without penalty so long as the balance owing on ASC's Allowed Secured Claim is satisfied out of the sale proceeds. The balance of ASC's Allowed Claim shall be treated in accordance with Class 3-A.

13. **Chase Home Mortgage: Class 2-M**

This Class consists of the Allowed Secured Claim held by Chase, as to its first position secured interest in the Starlight Property. The Debtors anticipate that they will reach a stipulation with Chase as to the value of its Allowed Secured Claim and the treatment of that Allowed Secured Claim under the Plan. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. Chase filed a secured claim in the amount of $167,801.16. The Debtors assert that Chase's Claim is in first position on the Starlight Property junior only to real property taxes. Chase shall retain its lien on the Starlight Property. Chase's Allowed Secured Claim shall be allowed at the value of the Starlight Property minus all secured debt that is senior to Chase's lien position. The Debtors believe the current value of the Starlight Property is $80,000.00 based upon the current market and comparative sales. As a result, Chase's Allowed Secured Claim is $80,000.00 ($80,000.00 value minus $0 owing in real property taxes). This obligation will be reamortized at the Allowed Secured Claim and paid in interest only payments at 4% for 3 years, and thereafter paid in equal monthly payments of principal and interest, with interest at the rate of 5.25%, with the Allowed Secured Claim fully amortized over 20 years.

Further, the funds necessary for the escrow account for real property taxes and insurance will be added to the monthly payment, the escrow account will remain in place for the payment of real property taxes and insurance, and any funds in the escrow account on the Petition Date will be used for that purpose. The Debtor may prepay this obligation without penalty at any time. Chase shall release its lien in the Starlight Property once its Allowed Secured Claim has been paid. The Debtor may sell the Starlight Property at any time without penalty so long as the balance owing on Chase's Allowed Secured Claim is satisfied out of the sale proceeds. The balance of Chase's Allowed Claim shall be treated in accordance with Class 3-A.

### 14. **Duane Wyles/Yavapai Title Agency, Inc.: Class 2-N**

This Class consists of the Allowed Secured Claim held by Duane Wyles ("Wyles"), as to his first position secured interest in the 20048 Stagecoach Property. The Debtors anticipate that they will reach a stipulation with Wyles as to the value of its Allowed Secured Claim and the treatment of that Allowed Secured Claim under the Plan. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. Wyles filed a secured proof of claim in the amount of $18,000.00. The Debtors assert that Wyles' Claim is in first position on the 20048 Stagecoach Property junior only to real property taxes. Wyles shall retain his lien position on the 20048 Stagecoach Property. Wyles' Allowed Secured Claim shall be allowed at the value of the 20048 Stagecoach Property minus all secured debt that is senior to Wyles' lien position. The Debtors believe the current value of the 20048 Stagecoach Property is $8,000.00 based upon the current market and comparative sales. As a result, Wyles' Allowed Secured Claim is $7,633.84 ($8,000.00 value minus $366.16 owing in real property taxes). This obligation will be reamortized at the Allowed Secured Claim and paid in interest only payments at 4% for 3 years, and thereafter paid in equal monthly payments of principal and interest, with interest at the rate of 5.25%, with the Allowed Secured Claim fully amortized over 20 years. Further, the funds necessary for the escrow account for real property taxes and insurance will be added to the monthly payment, the escrow account will remain in place for the payment of real property taxes and insurance, and any funds in the escrow account on the Petition Date will be used for that purpose. The Debtor may prepay this obligation without penalty at any time. Wyles shall release its lien in the 20048 Stagecoach Property once its

Allowed Secured Claim has been paid. The Debtor may sell the 20048 Stagecoach Property at any time without penalty so long as the balance owing on Wyles's Allowed Secured Claim is satisfied out of the sale proceeds. The balance of Wyles's Allowed Claim shall be treated in accordance with Class 3-A.

### 15. Elwood and Martha Dudley: Class 2-O

This Class consists of the Allowed Secured Claim held by Elwood and Martha Dudley (the "Dudleys"), as to their first position secured interest in the Pine View Property. The Debtors anticipate that they will reach a stipulation with Dudleys as to the value of its Allowed Secured Claim and the treatment of that Allowed Secured Claim under the Plan. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. The Dudleys filed a secured proof of claim in the amount of $125,000.00. The Debtors assert that the Dudleys' Claim is in first position on the Pine View Property junior only to real property taxes. The Dudleys shall retain their lien on the Pine View Property. The Dudleys' Allowed Secured Claim shall be allowed at the value of the Pine View Property minus all secured debt that is senior to the Dudleys' lien position. The Debtors believe the current value of the Pine View Property is $60,000.00 based upon the current market and comparative sales. As a result, the Dudleys' Allowed Secured Claim is $60,000.00 ($60,000.00 value minus $0 owing in real property taxes). This obligation will be reamortized at the Allowed Secured Claim and paid in interest only payments at 4% for 3 years, and thereafter paid in equal monthly payments of principal and interest, with interest at the rate of 5.25%, with the Allowed Secured Claim fully amortized over 20 years. Further, the funds necessary for the escrow account for real property taxes and insurance will be added to the monthly payment, the escrow account will remain in place for the payment of real property taxes and insurance, and any funds in the escrow account on the Petition Date will be used for that purpose. The Debtor may prepay this obligation without penalty at any time. Dudleys shall release its lien in the Pine View Property once its Allowed Secured Claim has been paid. The Debtor may sell the Pine View Property at any time without penalty so long as the balance owing on Dudleys's Allowed Secured Claim is satisfied out of the sale proceeds. The balance of Dudleys's Allowed Claim shall be treated in accordance with Class 3-A.

### 16.    The Metzger Heirs:  Class 2-P

This Class consists of the Allowed Secured Claim held by Janet M. Quinton, Pamela Lane and William Lane, the heirs of Dorothy A. Metzger (the "Metzger Heirs"), as to their first position secured interest in the Sierra Drive Property.  The Debtors anticipate that they will reach a stipulation with Metzger Heirs as to the value of its Allowed Secured Claim and the treatment of that Allowed Secured Claim under the Plan.  In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control.  The Metzger Heirs filed a secured proof of claim in the amount of $78,377.26.  The Debtors assert that the Metzger Heirs Claim is in first position on the Sierra Drive Property junior only to real property taxes.  The Metzger Heirs shall retain their lien on the Sierra Drive Property.  The stipulation with the Metzger Heirs provides that the automatic stay shall be immediately lifted and the Metzger Heirs may either foreclose their interest in the Sierra Drive Property through trustee sale or the Debtors shall provide the Metzger Heirs a deed in lieu of foreclosure.  Such stipulation is specifically incorporated herein as approved by the Court and to the extent of any inconsistency between the treatment herein and the treatment under the stipulation as approved by the Court, the terms of the stipulation as approved by the Court control.  The balance of the Metzger Heirs' Allowed Claim, if any,  shall be treated in accordance with Class 3-A.

### C.    Unsecured Claims: Class 3

#### 1.    General Unsecured Claims:  Class 3-A

Class 3-A consists of the Allowed Unsecured Claims of Creditors.  Class 3-A Creditors shall be paid a pro-rata share from the Debtors' Excess Cash Flow, on a quarterly basis, in an amount sufficient to fund the value of the Debtors' Liquidation Equity (as calculated in the Debtors' Disclosure Statement), after all senior Allowed Claims have been paid in accordance with the terms of the Plan.  Any Allowed Unsecured Claims that are determined to be non-dischargeable will continue to receive a pro-rata distribution of the Excess Cash Flow until satisfied in full.

### D.    Debtors' Interest: Class 4

#### 1.    Debtors' Interest:  Class 4-A

Pursuant to §1129(a)(15) and (b)(2)(B)(ii) of the Bankruptcy Code, the Debtors shall retain their interest in all estate property in consideration of their funding of Allowed Claims and shall receive all exempt property.

## V.  MEANS FOR EXECUTING THE PLAN

### A.  Funding

Pursuant to §1123(a)(8) of the Bankruptcy Code, the Debtors shall provide for the payment to creditors under the Plan of all or such portion of earnings from personal services performed by the Debtors after the commencement of the case or other future income of the Debtors as is necessary for the execution of the Plan. The Debtors will contribute their Excess Cash Flow in an amount sufficient to fund the value of their Liquidation Equity.

### B.  Liquidation of Estate Property

The Debtors shall have the authority to retain such brokers, agents, counsel, or representatives, as they deem necessary to liquidate all assets of the bankruptcy estate. Prior to Confirmation, the Debtors shall sell their Real Property pursuant to an order of the Bankruptcy Court to the highest and best bidder. Any sales which occur post-confirmation shall not require approval of the Bankruptcy Court for the sale, although the Debtors will be free to seek such order if it deems appropriate.

### C.  Management

The Reorganized Debtors will continue to operate under the same management structure utilized prior to Confirmation.

### D.  Disbursing Agent.

The Reorganized Debtors shall act as the Disbursing Agent under the Plan.

### E.  Documentation of Plan Implementation.

In the event any entity which possesses an Allowed Secured Claim or any other lien in any of the Debtors' property for which the Plan requires the execution of any documents to incorporate the terms of the Plan, fails to provide a release of its lien or execute the necessary documents to satisfy the requirements of the Plan, the Debtors may record a copy of this Plan or the Confirmation Order with the appropriate governmental agency and such recordation shall constitute the lien release and creation of any necessary new liens to satisfy the terms of the Plan. If the

Debtors deem advisable, they may obtain a further Order from the Court that may be recorded in order to implement the terms of the Plan.

## VI.    EFFECT OF CONFIRMATION

Because the Debtors are individuals, pursuant to § 1141(d)(5) of the Bankruptcy Code, Confirmation of the Plan does not provide the discharge for the Debtors. The Debtors will move for the entry of a final decree after the Debtors have provided for the implementation of the Plan, and the final decree will contain the language providing the Debtors their discharge and such final decree will discharge any and all debts of the Debtors, that arose any time before the entry of the Confirmation Order, including, but not limited to, all principal and all interest accrued thereon, pursuant to § 1141(d) of the Bankruptcy Code. The discharge shall be effective as to each Claim, regardless of whether a proof of claim thereon was filed, whether the Claim is an Allowed Claim, or whether the holder thereof votes to accept the Plan.

In addition, any pre-confirmation obligations of the Debtors dealt with in this Plan shall be considered New Obligations of the Debtors, and these New Obligations shall not be considered in default unless and until the Reorganized Debtors default on the New Obligations pursuant to the terms of the Plan. The New Obligations provided for in the Plan shall be in the place of, and completely substitute for, any pre-Confirmation obligations of the Debtors and, once the Plan is confirmed, the only obligations of the Debtors shall be such New Obligations as provided for under the Plan.

## VII.    OBJECTIONS TO AND ESTIMATIONS OF CLAIMS

### A.    Objections and Bar Date for Filing Objections.

As soon as practicable, but in no event later than 120 days after the Effective Date, objections to Claims shall be filed with the Bankruptcy Court and served upon the Debtors and the holders of each of the Claims to which objections are made pursuant to the Bankruptcy Code and the Bankruptcy Rules. Objections filed after such date will be barred.

### B.    Settlement of Claims.

Settlement of any objection to a Claim not exceeding $10,000 shall be permitted on the eleventh (11th) day after notice of the settlement has been provided to the Debtors, the Creditors, the settling party, and other persons specifically requesting such notice, and if on such date there is

no written objection filed, such settlement shall be deemed approved. In the event of a written objection to the settlement, the settlement must be approved by the Court on notice to the objecting party.

**C.     Estimation of Claims.**

For purposes of making distributions provided for under the Plan, all Claims objected to shall be estimated by the Disbursing Agent at an amount equal to (i) the amount, if any, determined by the Court pursuant to §502(c) of the Bankruptcy Code as an estimate for distribution purposes; (ii) an amount agreed to between the Debtor and the Claimant; or, (iii) that amount set forth as an estimate in the Plan or Disclosure Statement. Notwithstanding anything herein to the contrary, no distributions shall be made on account of any Claim until such Claim is an Allowed Claim.

**D.     Unclaimed Funds and Interest**

Distribution to Claimants shall be mailed by the Reorganized Debtors to the Claimants at the address appearing on the master mailing matrix unless the Claimant provides the Reorganized Debtors with an alternative address. For a period of one year from the date that a distribution was to be made by the disbursing agent but has gone uncollected by the Claimant, the disbursing agent shall retain any distributions otherwise distributable hereunder which remain unclaimed or as to which the disbursing agent has not received documents required pursuant to the Plan. Thereafter, the unclaimed funds shall revest in the Reorganized Debtors.

**VIII.   NONALLOWANCE OF PENALTIES AND FINES**

No distribution shall be made under this Plan on account of, and no other Allowed Claim, whether secured, unsecured, administrative, or priority, shall include any fine, penalty, exemplary or punitive damages, late charges, default interest or other monetary charges relating to or arising from any default or breach by the Debtors, and any Claim on account thereof shall be deemed disallowed, whether or not an objection was filed to it.

**IX.    CLOSING OF CASE**

Until this case is officially closed, the Reorganized Debtors will be responsible for filing pre- and post-confirmation reports required by the United States Trustee and paying the quarterly post-confirmation fees of the United States Trustee, in cash, pursuant to 28 U.S.C. §1930, as amended.

Pursuant to 11 U.S.C. §1129(a)(12), all fees payable under section 1930 of title 28, as determined by the Court at the hearing on confirmation of the Plan, will be paid, in cash, on the Effective Date.

## X.    **MODIFICATION OF THE PLAN**

In addition to their modification rights under §1127 of the Bankruptcy Code, the Debtors may amend or modify this Plan at any time prior to Confirmation without leave of the Court. The Debtors may propose amendments and/or modifications of this Plan at any time subsequent to Confirmation with leave of the Court and upon notice to Creditors. After Confirmation of the Plan, the Debtors may, with approval of the Court, as long as it does not materially or adversely affect the interests of Creditors, remedy any defect or omission or reconcile any inconsistencies of the Plan, or in the Confirmation Order, if any may be necessary to carry out the purposes and intent of this Plan.

## XI.    **JURISDICTION OF THE COURT**

The Court will retain jurisdiction until this Plan has been fully consummated for including, but not limited to, the following purposes:

1.    The classification of the Claims of any Creditors and the re-examination of any Claims which have been allowed for the purposes of voting, and for the determination of such objections as may be filed to the Creditor's Claims. The failure by the Debtors to object to or examine any Claim for the purpose of voting shall not be deemed to be a waiver of the Debtors' rights to object to or to re-examine the Claim in whole or in part.

2.    To determine any Claims which are disputed by the Debtors, whether such objections are filed before or after Confirmation, to estimate any Unliquidated or Contingent Claims pursuant to 11 U.S.C. §502(c)(1) upon request of the Debtor or any holder of a Contingent or Unliquidated Claim, and to make determination on any objection to such Claim.

3.    To determine all questions and disputes regarding title to the assets of the estate, and determination of all causes of action, controversies, disputes or conflicts, whether or not subject to action pending as of the date of Confirmation, between the Debtors and any other party, including but not limited to, any rights of the Debtors to recover assets pursuant to the provisions of the Bankruptcy Code.

4.      The correction of any defect, the curing of any omission or any reconciliation of any inconsistencies in this Plan, or the Confirmation Order, as may be necessary to carry out the purposes and intent of this Plan.

5.      The modification of this Plan after Confirmation, pursuant to the Bankruptcy Rules and the Bankruptcy Code.

6.      To enforce and interpret the terms and conditions of this Plan.

7.      The entry of an order, including injunctions, necessary to enforce the title, rights and powers of the Debtors, and to impose such limitations, restrictions, terms and conditions of such title, right and power that this Court may deem necessary.

8.      The entry of an order concluding and terminating this case.

## XII.   RETENTION AND ENFORCEMENT OF CLAIMS

Pursuant to §1123(b)(3) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce any and all claims of the Debtors, except those claims specifically waived herein.

## XIII.   EXECUTORY CONTRACTS

The Debtors reject all executory contracts and unexpired leases not otherwise assumed herein or by separate order of the Court. Claims for any executory contracts or unexpired leases rejected by the Debtors shall be filed no later than ten (10) days after the earlier of Confirmation or the date the executory contract or unexpired lease is specifically rejected.  Any such Claims not timely filed and served shall be disallowed.

## XIV.   REVESTING

Except as provided for in the Plan or in the Confirmation Order, on the Effective Date the Reorganized Debtors shall be vested with all the property of the estate free and clear of all claims, liens, charges, and other interests of Creditors, arising prior to the Effective Date.   Upon the Effective Date, the Reorganized Debtors shall operate their business free of any restrictions.

DATED this ____ day of _____, 2009.

AIKEN SCHENK HAWKINS & RICCIARDI P.C.


By _____
         D. Lamar Hawkins
         4742 North 24th Street
         Suite 100

Pursuant to 11 U.S.C. §1129(a)(12), all fees payable under section 1930 of title 28, as determined by the Court at the hearing on confirmation of the Plan, will be paid, in cash, on the Effective Date.

## X.    **MODIFICATION OF THE PLAN**

In addition to their modification rights under §1127 of the Bankruptcy Code, the Debtors may amend or modify this Plan at any time prior to Confirmation without leave of the Court. The Debtors may propose amendments and/or modifications of this Plan at any time subsequent to Confirmation with leave of the Court and upon notice to Creditors. After Confirmation of the Plan, the Debtors may, with approval of the Court, as long as it does not materially or adversely affect the interests of Creditors, remedy any defect or omission or reconcile any inconsistencies of the Plan, or in the Confirmation Order, if any may be necessary to carry out the purposes and intent of this Plan.

## XI.    **JURISDICTION OF THE COURT**

The Court will retain jurisdiction until this Plan has been fully consummated for including, but not limited to, the following purposes:

1. The classification of the Claims of any Creditors and the re-examination of any Claims which have been allowed for the purposes of voting, and for the determination of such objections as may be filed to the Creditor's Claims. The failure by the Debtors to object to or examine any Claim for the purpose of voting shall not be deemed to be a waiver of the Debtors' rights to object to or to re-examine the Claim in whole or in part.

2. To determine any Claims which are disputed by the Debtors, whether such objections are filed before or after Confirmation, to estimate any Unliquidated or Contingent Claims pursuant to 11 U.S.C. §502(c)(1) upon request of the Debtor or any holder of a Contingent or Unliquidated Claim, and to make determination on any objection to such Claim.

3. To determine all questions and disputes regarding title to the assets of the estate, and determination of all causes of action, controversies, disputes or conflicts, whether or not subject to action pending as of the date of Confirmation, between the Debtors and any other party, including but not limited to, any rights of the Debtors to recover assets pursuant to the provisions of the Bankruptcy Code.

4. The correction of any defect, the curing of any omission or any reconciliation of any inconsistencies in this Plan, or the Confirmation Order, as may be necessary to carry out the

purposes and intent of this Plan.

5. The modification of this Plan after Confirmation, pursuant to the Bankruptcy Rules and the Bankruptcy Code.

6. To enforce and interpret the terms and conditions of this Plan.

7. The entry of an order, including injunctions, necessary to enforce the title, rights and powers of the Debtors, and to impose such limitations, restrictions, terms and conditions of such title, right and power that this Court may deem necessary.

8. The entry of an order concluding and terminating this case.

## XII. RETENTION AND ENFORCEMENT OF CLAIMS

Pursuant to §1123(b)(3) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce any and all claims of the Debtors, except those claims specifically waived herein.

## XIII. EXECUTORY CONTRACTS

The Debtors reject all executory contracts and unexpired leases not otherwise assumed herein or by separate order of the Court. Claims for any executory contracts or unexpired leases rejected by the Debtors shall be filed no later than ten (10) days after the earlier of Confirmation or the date the executory contract or unexpired lease is specifically rejected. Any such Claims not timely filed and served shall be disallowed.

## XIV. REVESTING

Except as provided for in the Plan or in the Confirmation Order, on the Effective Date the Reorganized Debtors shall be vested with all the property of the estate free and clear of all claims, liens, charges, and other interests of Creditors, arising prior to the Effective Date. Upon the Effective Date, the Reorganized Debtors shall operate their business free of any restrictions.

DATED this ____ day of _____, 2009.

AIKEN SCHENK HAWKINS & RICCIARDI P.C.

By _____
D. Lamar Hawkins
4742 North 24th Street
Suite 100
Phoenix, Arizona 85016-4859
Attorneys for Debtors

_____
Timothy J. Bowman, Debtor-in-Possession

_____
LeAnne C. Bowman, Debtor-in-Possession

COPY of the foregoing mailed, or served
via electronic notification* or fax** or if so marked,
this _____ day of _____, 2009, to:

U.S. TRUSTEE'S OFFICE
230 N. First Ave., Ste. 204
Phoenix, AZ 85003-1706

Christopher R. Perry aznotices@clogs.com
PERRY & SHAPIRO, LLP
3300 N. Central Ave., Suite 2200
Phoenix, AZ 85012
Attorney for: JP Morgan Chase Bank

John D. Schlotter
Maria Tsagaris
MCCALLA RAYMER, LLC
1544 Old Alabama Rd.
Roswell, GA 30076-2102
Attorney for: America's Servicing Co.

Jeremy M. Goodman jgoodman@gustlaw.com
GUST ROSENFELD P.L.C.
201 E. Washington St., Suite 800
Phoenix, AZ 85004-2327
Attorney for: Pamela Lane, Estate of Dorothy Metzger

Mark S. Bosco msb@tblaw.com
TIFFANY & BOSCO P.A.
2525 E. Camelback Rd. Suite 300
Phoenix, AZ 85016
Attorney for: National City Mortgage Co.

Ramesh Singh claims@recoverycorp.com
c/o Recovery Management Systems Corp.
25 SE 2nd Ave., Suite 1120
Miami, FL 33131-1605
Attorney for: GE Money Bank

30

Dean R. Prober dprober@ppr.net
POLK, PROBER & RAPHAEL
20750 Ventura Boulevard
Suite 100
Woodland Hills, CA 91364
Attorney for: BAC Home Loans

Larry O. Folks, Esq. folks@folksoconnor.com
FOLKS & O'CONNOR, PLLC
1850 North Central Avenue
Suite 1140
Phoenix, AZ 85004
Attorney for: M&I Marshall & Ilsley Bank

---

S:\Bowman.T\2816801\Pleadings\Plan.doc

Timothy and LeAnne Bowman
Chapter 11 No. 09-12983-RTBP

Claims Analysis

| Claim No | Creditor | Scheduled Amount | Scheduled as Unknown/ Not Scheduled | Co-Debtor | C/U/D | POC Amount | Comments |
|---|---|---|---|---|---|---|---|
| | **Secured Creditors:** | | | | | | |
| 15 | Alton & Yvonne Eklund | | Notice Only | | | $ 112,500.00 | 20239 E. Zaragoza Dr |
| 11, 18 | America's Servicing Company | $ 430,000.00 | | | | $ 444,221.84 | 3201 N. Yavapai Rd |
| 10, 17 | America's Servicing Company | $ 440,000.00 | | | | $ 465,943.79 | 3316 N. Corrine Dr |
| 1 | Chase Home Mortgage | $ 160,000.00 | | | | $ 167,801.16 | 3425 N. Starlight Dr |
| 14 | Coconino County Treasurer | | Notice Only | | | $ 132.26 | |
| 21 | Countrywide Home Loans | $ 202,000.00 | | | | $ 202,519.07 | 3075 N. Pleasant View Dr; Claim filed late-8/6/09 by RBC Mortgage |
| 7 | Duane Wyles | | Notice Only | | | $ 18,000.00 | 20048/20060 Stagecoach Trail |
| 12, 13 | Elwood & Martha Dudley | | Notice Only | | | $ 125,000.00 | 3076 N. Pine View Dr |
| | First American Title Company | | Notice Only | | | | 3201 N. Yavapai Rd |
| 24 | Maricopa County Treasurer | | Notice Only | | | $ 1,247.85 | 22208 Bajada; Claim filed late-9/29/09 |
| 20 | M&I Marshall & Ilsley Bank | $ 87,000.00 | | | | $ 85,255.04 | 20519 Quail Run; Claim filed late-8/5/09 |
| 19 | M&I Marshall & Ilsley Bank | $ 102,000.00 | | | | $ 100,244.89 | 22208 Bajada; Claim filed late-8/5/09 |
| 9 | Mohave County Treasurer | | Notice Only | | | $ 82.24 | |
| 8 | National City Mortgage | $ 128,000.00 | | | | $ 125,723.50 | 8120 E. Barbara Rd |
| | Noteworld/Chicago Title Company | $ 113,000.00 | | | | | 20239 E. Zaragoza Dr |
| | Noteworld/Chicago Title Company | $ 125,000.00 | | | | | 3076 N. Pine View Dr |
| 23 | Noteworld/Chicago Title Company/Metzger | $ 79,000.00 | | | | $ 78,377.26 | 5 Lots on Sierra Dr |
| 22 | Wells Fargo | $ 250,000.00 | | | | $ 250,842.19 | 3075 N. Pleasant View Dr; Claim filed late-8/18/09 |
| | Yavapai Title Agency, Inc. | $ 18,000.00 | | | | | 20048/20060 Stagecoach Trail |
| 6 | Yavapai County Treasurer | | Notice Only | | | $ 1,369.89 | |
| | **Total Secured:** | **2,134,000.00** | | | | | |
| | | | | | | | |
| | **Priority Creditors:** | | | | | | |
| | Albert Dipasquale | $ 500.00 | | | | | Security Deposit |
| | Antonio & Yessica Solis | $ 625.00 | | | | | Security Deposit |
| 2 | AZ Dept. of Revenue | | Notice Only | | | $ 1,478.00 | |
| | Charle s Ables | $ 625.00 | | | | | |
| | Danielle Furtado | $ 625.00 | | | | | |
| | Dawn Gawron | $ 625.00 | | | | | |
| 16 | IRS | | Notice Only | | | $ 4,762.25 | Claim filed late-8/4/09 |
| | Kathryn Ewing | $ 950.00 | | | | | |
| | Louis & Dawn Duren | $ 500.00 | | | | | |
| | Michelle Roberts | $ 500.00 | | | | | |
| | Talia Figueroa | $ 650.00 | | | | | |
| | **Total Priority:** | **$ 4,475.00** | | | | | |
| | | | | | | | |
| | **Unsecured Creditors:** | | | | | | |
| | America's Servicing company | $ 443,000.00 | | | C/U | | 3081 N. Yavapai Rd (Poss. Deficiency) |
| | Bank of America | $ 4,500.00 | | | C/U | | x7099 |
| | Bank of America | $ 43,000.00 | | | C/U | | x8824 |
| | Choice Visa | $ 7,500.00 | | | C/U | | x1880 |
| | FIA Card Services | $ 10,000.00 | | | C/U | | x3767 |
| | FIA Card Services | $ 4,900.00 | | | C/U | | x1996 |
| | First American Title Company | | Notice Only | | | | 3081 N. Yavapai Rd (Poss. Deficiency) |
| 3 | First Credit Union | $ 4,000.00 | | | C/U | $ 10,500.00 | x2401-7 |
| 4 | First Credit Union | | | | | $ 747.91 | Negative Checking |
| 5 | First Credit Union | $ 9,600.00 | | | C/U | $ 8,996.26 | x2571-5 |
| | Home Depot | $ 14,000.00 | | | C/U | | x8655 |
| | Prescott Radiologists | $ 500.00 | | | C/U | | x81850 |
| | Yavapai Regional East | $ 1,350.00 | | | C/U | | 315246-3 and 1087352 |
| | **Total Unsecured:** | **$ 542,350.00** | | | | | |



EXHIBIT B